# EXHIBIT A

**Affidavit of Philip M. Abelson**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
                                              :
*In re*                                       : Chapter 11
                                              :
NEWPAGE CORPORATION, *et al.*,                : Case No. 11-12804 (KG)
                                              :
      Debtors.[1]                          : Jointly Administered
                                              :
---------------------------------------------------------------x

**AFFIDAVIT OF PHILIP M. ABELSON IN SUPPORT OF DEBTORS' APPLICATION, PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a) AND 328(a), BANKRUPTCY RULE 2014(a), AND LOCAL RULE 2014-1, FOR AUTHORIZATION TO EMPLOY AND RETAIN DEWEY & LEBOEUF LLP AS ATTORNEYS FOR THE DEBTORS, *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

STATE OF NEW YORK    )
                               ) ss.:
COUNTY OF NEW YORK  )

        Philip M. Abelson, being duly sworn, deposes and says:

        1.     I am a member of the firm of Dewey & LeBoeuf LLP ("D&L"), a law firm with its principal office at 1301 Avenue of the Americas, New York, New York 10019. D&L is an international law firm with more than 1,200 lawyers in multiple countries, including the United States, United Kingdom, Belgium, France, Germany, Italy, Poland, China, Dubai, South Africa, Kazakhstan, Russia and Saudi Arabia. Within the United States, D&L has offices in Albany and New York City, New York; East Palo Alto, Los Angeles, and San Francisco, California; Chicago, Illinois; Boston, Massachusetts; Houston, Texas; and Washington, D.C.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Chillicothe Paper Inc. (6154), Escanaba Paper Company (5598), Luke Paper Company (6265), NewPage Canadian Sales LLC (5384), NewPage Consolidated Papers Inc. (8330), NewPage Corporation (6156), NewPage Energy Services LLC (1838), NewPage Group Inc. (2465), NewPage Holding Corporation (6158), NewPage Port Hawkesbury Holding LLC (8330), NewPage Wisconsin System Inc. (3332), Rumford Paper Company (0427), Upland Resources, Inc. (2996), and Wickliffe Paper Company LLC (8293). The Debtors' corporate headquarters is located at 8540 Gander Creek Drive, Miamisburg, OH 45342.

2. I am admitted to practice and am a member in good standing of the bar of the State of New York. I am a voluntarily inactive member of the bar of the State of California. I have been granted admission *pro hac vice* to practice before this Court in connection with the Debtors' chapter 11 cases.

3. I submit this affidavit (this "Affidavit") in connection with the application (the "Application") of NewPage Corporation and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors" or "NewPage"), for approval of the Debtors' employment and retention of D&L, as their attorneys in the above-captioned chapter 11 cases, at D&L's normal hourly rates in effect from time-to-time, and in accordance with D&L's normal reimbursement policies, in compliance with sections 327(a), 328(a), 329(a), and 504 of title 11 of the United States Code (the "Bankruptcy Code"), and to provide the disclosure required under Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rules"). Unless otherwise stated in this Affidavit, I have personal knowledge of the facts set forth herein. To the extent any information disclosed herein requires amendment or modification upon D&L's completion of further review, or as additional party in interest information becomes available, a supplemental affidavit (by me or another member of D&L) will be submitted to the Court reflecting such amended or modified information.

### Disinterestedness of D&L

4. Except as set forth herein, to the best of my knowledge, after due inquiry, neither I, D&L, nor any member, counsel, or associate of, D&L represents any party in interest or entity other than the Debtors in connection with these chapter 11 cases.

5. D&L is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that D&L, its members, counsel, and associates:

    i. are not creditors, equity security holders, or insiders of the Debtors;

    ii. are not and were not, within two years before the Commencement Date, a director, officer, or employee of the Debtors;

    iii. do not have an interest materially adverse to the interests of the estates or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or for any other reason; and

    iv. have not represented any party in connection with matters relating to the Debtors (except as stated in this Affidavit), although D&L has certain relationships with other parties in interest and other professionals in connection with matters unrelated to these chapter 11 cases.

### D&L's Prepetition Relationship with the Debtors

6. Since December 2, 2010, D&L has advised the Debtors in connection with the legal aspects of their financial restructuring efforts. D&L is not a creditor of the Debtors. In the one year prior to the commencement of these chapter 11 cases (the "Commencement Date"), D&L received payment (a) for professional services rendered in connection with a potential restructuring, in the aggregate amount of $3,813.276, and an expense reimbursement in the amount of approximately $80,297;[2] (b) on January 12, 2011, of an initial retainer and advance against expenses in the amount of $900,000, on account of professional services to be performed in preparation for and prosecution of these chapter 11 cases; and (c) on August 31, 2011, of an additional retainer in the amount of $2.6 million (for the same purposes as the initial retainer).

---

[2] The precise amount will be determined upon the final recording of all time and expense charges incurred prior to the Commencement Date.

As of the Commencement Date, after applying prefiling amounts due, D&L currently holds a retainer in the approximate amount of $1,489,326.37. After application of amounts for any additional prepetition professional services and related expenses, D&L will continue to hold the excess amounts as a general retainer.

### D&L's Disclosure Procedures

7. D&L has a large and diversified legal practice that encompasses the representation of many financial institutions and commercial corporations, including entities that have interests in distressed debt and/or distressed entities. D&L has in the past represented, currently represents, and may in the future represent, entities that are claimants of, or interest holders in, the Debtors, in matters unrelated to the Debtors' chapter 11 cases. Some of these entities are, or may consider themselves to be, creditors or parties in interest in the Debtors' pending chapter 11 cases or may otherwise have interests in these cases. D&L will not represent such entities in matters related to these chapter 11 cases.

8. In preparing this Affidavit, I implemented a set of procedures utilized by D&L to ensure compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, regarding the retention of professionals by a debtor under the Bankruptcy Code (the "Firm Disclosure Procedures"). Pursuant to the Firm Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this Affidavit and to ascertain D&L's connection to such parties:

   a. A comprehensive list of the types of entities that may have contacts with the Debtors was developed through discussions with the D&L attorneys who have provided services to the Debtors and in consultation with senior management of the Debtors, the categories of which are listed on Schedule 1, attached hereto (the "Retention Checklist").

   b. D&L obtained information responsive to the Retention Checklist through several inquiries of the Debtors' senior management and

4

review of documents provided by the Debtors to D&L. D&L then used that information, together with other information identified by D&L, to compile a list of the names of persons or entities that may be parties in interest in these chapter 11 cases (the "<u>Potential Parties in Interest</u>").

c. D&L maintains various databases as part of its conflict clearance and billing records (the "<u>Conflicts Databases</u>"). The Conflicts Databases include the names of entities for which any attorney time charges have been billed since the databases were created. The Conflicts Databases include the name of each current or former client, the names of the parties who are or were related or adverse to such current or former client, and the names of the D&L personnel who are or were responsible for current or former matters for such client. It is the policy of D&L that no new matter may be accepted or opened within the Firm without completing and submitting to those charged with maintaining the conflict clearance system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the name of the matter, adverse parties and, in some cases, parties related to the client or to an adverse party. Accordingly, the databases are updated for every new matter undertaken by D&L. The accuracy of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

d. D&L submitted the names of each of the Potential Parties in Interest to compile a comparison against client matters in the Conflicts Databases for which professional time was recorded during the two years prior to the comparison.[3] Any matches to names in the Conflicts Databases generated by the comparison were compiled in a list, together with the names of the respective D&L personnel responsible for the identified client matters (the "<u>Match List</u>").

e. A D&L attorney then reviewed the Match List and deleted obvious name coincidences and individuals or entities that were adverse to D&L's clients in both this matter and the matter referenced on the Match List.

f. Using information in the Conflicts Databases concerning entities on the Match List, and making general and, if applicable, specific

---

[3] For purposes of the Firm Disclosure Procedures, D&L considers an entity a "former client" if all matters for such client have been closed or, if any matters for such client remain open, if no billable time for such client has been recorded in the past two years. Because the Firm Disclosure Procedures only reflect client activity during the past two years, matches to client matters outside that timeframe are not reflected in this Affidavit.

inquiries of D&L personnel, D&L verified that it does not represent and has not represented any entity on the Match List in a matter connected to the Debtors or these chapter 11 cases.

g.  In addition, a general inquiry to all D&L personnel (attorneys and staff) was sent by electronic mail to determine whether any such individual or any member of his or her household (i) holds a claim against, or equity interests in, any of the Debtors; or (ii) is or was an "insider" of any of the Debtors, as the term is defined in section 101(31) of the Bankruptcy Code.

**D&L's Connections with Parties in Interest in
Matters Unrelated to these Chapter 11 Cases**

9.  In applying the Firm Disclosure Procedures, D&L has identified the client connections disclosed below. The connections are categorized as follows: (i) Potential Parties in Interest, or affiliates thereof, for which D&L has rendered services within the last two years ("Current Clients"); (ii) Potential Parties in Interest, or affiliates thereof, for which D&L has rendered services in the past two years and with respect to which D&L's engagement is closed ("Former Clients"); (iii) Potential Parties in Interest, or affiliates thereof, which have either a name similar to a client identified on the Match List, or may be related to such a client, or a D&L engagement has been opened but no services have been rendered within the last six months (collectively, "Potential Clients"); and (iv) Potential Parties in Interest, or affiliates thereof, which have a substantive relationship to a matter for which D&L rendered services to a Current or Former Client, or affiliate thereof ("Related Entities"). All client connections were diligently reviewed by an attorney working under my supervision or the supervision of my partners. From such review, it was determined that, except as may be disclosed below, with respect to each connection between D&L and such parties, D&L does not hold or represent an interest that is adverse to the Debtors' estates, and that D&L is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, for the reasons discussed below.

### A. Current Clients

10. In applying the Firm Disclosure Procedures, D&L has determined that D&L has rendered services within the past two years to the Current Clients, or their affiliates, identified on Exhibit A, in matters unrelated to the Debtors and these Chapter 11 Cases.

11. To the best of my knowledge and information, none of the entities listed as Current Clients identified on Exhibit A represent more than one percent of D&L's revenues over the past 12 months, other than the following entities, with the applicable percentages indicated: Barclays American Leasing, Inc. – 1.4% (affiliate of Barclays Capital); General Electric Company – 1.2%; and Zurich Insurance Company – 1.0% (affiliate of Zurich American Insurance Company).

### B. Former Clients

12. In applying the Firm Disclosure Procedures, D&L has determined that the Potential Parties in Interest identified on Exhibit B are Former Clients.

### C. Potential Clients

13. In applying the Firm Disclosure Procedures, D&L has determined that the Potential Parties in Interest identified on Exhibit C are Potential Clients:

### D. Related Entities

14. In applying the Firm Disclosure Procedures, D&L has determined that the Potential Parties in Interest, identified on Exhibit D are Related Entities:

15. D&L has not, and will not, represent any of the aforementioned entities, or any of their respective affiliates or subsidiaries, in relation to the Debtors or their chapter 11 cases. To the extent the Debtors find themselves in a position adverse to any of the parties with whom D&L has a relationship unrelated to these cases, D&L has advised the Debtors that they may need to retain separate counsel to pursue any adverse action against such parties.

### D&L Personnel Inquiry

16. D&L has conducted a general inquiry of its personnel to determine whether any D&L personnel or any member in his or her household (i) owns any debt or equity securities of any of the Debtors, (ii) holds a claim against any of the Debtors, or (iii) is or was an officer, director, or employee of any of the Debtors.

17. As a result of the inquiry, I have determined that no D&L personnel maintains any connection with, or relationship to, the Debtors, or holds claims against the Debtors, or equity interests therein.

18. D&L will continue to apply the Firm Disclosure Procedures as additional information concerning entities having a connection with the Debtors is developed and, as necessary, will file appropriate supplemental disclosures with the Court.

### D&L's Rates and Billing Practices

19. D&L's current customary hourly rates charged by D&L for professionals and paraprofessionals expected to be employed on this matter, subject to change from time to time, are $675 to $1,000 for members and counsel, $385 to $650 for associates, and $200 to $295 for paraprofessionals in D&L's United States offices.

20. D&L's disbursement policies pass through to clients all out of pocket expenses at actual cost or an estimated actual cost when the actual cost is difficult to determine. For example, as it relates to computerized research, D&L believes that it does not make a profit on that service as a whole although the cost of any particular search is difficult to ascertain. Other client reimbursable expenses (whether the service is performed by D&L in-house or through a third party vendor) include, but are not limited to, charges for facsimiles, toll calls, overtime, overtime meals, deliveries, court costs, conference costs (food), transcript fees, travel, and clerk fees.

21. No promises have been received by D&L or any member, counsel, or associate thereof as to payment or compensation in connection with these cases other than in accordance with the provisions set forth herein. D&L has no agreement with any other entity to share with such entity any compensation received by D&L or by such entity.

22. The Debtors' Application requests, pursuant to section 328(a) of the Bankruptcy Code, approval of their retention of D&L on rates, terms, and conditions consistent with what D&L charges non-chapter 11 clients, namely, prompt payment of its hourly rates as adjusted from time to time and reimbursement of out-of-pocket disbursements at cost or based on formulae that approximate the actual cost where the actual cost is not easily ascertainable. Subject to these terms and conditions, D&L intends to apply pursuant to section 330 of the Bankruptcy Code for allowances of compensation for professional services rendered in these chapter 11 cases and for reimbursement of actual and necessary expenses incurred in connection therewith.

The foregoing constitutes the statement of D&L pursuant to Bankruptcy Code sections 327(a), 328(a), and 329(a), Bankruptcy Rules 2014(a) and 2016(b), and Local Rules 2014-1 and 2016-1.

Executed on this 20th day of September, 2011.

_____
Philip M. Abelson

Subscribed and Sworn to before me
this 20th day of September, 2011

_Laura L. Saal_
Notary Public, State of New York
No.
Qualified in New York County
Commission expires:

LAURA L. SAAL
NOTARY PUBLIC, State of New York
No. 01SA6187588
Qualified in New York County
Commission Expires May 19, 2012

10