**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEWPAGE CORPORATION,[1] | Case No. 11-12804 (KG) |
|       Reorganized Debtor. | (Jointly Administered) |
| | **Hr'g Date: Dec. 17, 2018, at 11:00 a.m. (ET)**<br>**Obj. Deadline: Dec. 10, 2018, at 4:00 p.m. (ET)** |

**NEWPAGE CORPORATION'S MOTION FOR ENTRY OF A FINAL
DECREE (A) CLOSING ITS CHAPTER 11 CASE, (B) TERMINATING
CERTAIN CLAIMS AND NOTICING SERVICES, (C) ESTABLISHING
THE AMOUNT OF FEES OWED TO THE UNITED STATES TRUSTEE
PURSUANT TO 28 U.S.C. § 1930(a)(6), AND (D) GRANTING RELATED RELIEF**

---

[1] The last four digits of NewPage Corporation's federal tax identification number are 6156.  The corporate headquarters of NewPage Corporation is located at 8540 Gander Creek Drive, Miamisburg, OH 45342.

# TABLE OF CONTENTS

Page

JURISDICTION AND VENUE ....................................................................................... 1

BACKGROUND ............................................................................................................... 1
    A.       General............................................................................................................ 1
    B.       Claims Reconciliation and Distributions ...................................................... 3
    C.       The United States Trustee Fees ..................................................................... 4
    D.       The Litigation Trust's Wind-up Motion ....................................................... 4

RELIEF REQUESTED....................................................................................................... 5

BASIS FOR RELIEF......................................................................................................... 5
    A.       The Chapter 11 Case Has Been Fully Administered .................................... 5
    B.       Terminating Claims and Noticing Services .................................................. 9
    C.       The Payment of the U.S. Trustee Fees was Proper ..................................... 10

         1)    The Email Agreement between NewPage and the U.S. Trustee Warrants
               Approval of the Motion With Respect to U.S. Trustee Fees ................................. 10
         2)    The U.S. Trustee Fees Should be Calculated Without Reference to Post-
               Confirmation Ordinary Course Disbursements of Reorganized Debtors ............... 11

                I.      The Court Should Follow the Jurisprudence Holding That Only
                        Disbursements Made Pursuant to a Plan are Relevant for
                        Calculating Post-Confirmation Fees. ........................................... 12
                II.     Restricting the U.S. Trustee Fees to Bankruptcy-Related
                        Distributions Aligns with the Legislative History of the 1996
                        Amendment to 28 U.S.C. § 1930(a)(6)...................................... 16
                III.    The U.S. Trustee Fees, which are User Fees (Not Taxes), are
                        Unconstitutional as They Fail to Bear a Reasonable Relation to the
                        Services Provided by the U.S. Trustee to Reorganized Debtors
                        during the Post-Confirmation Period .......................................... 18

    D.       Final Report ................................................................................................ 21

CONCLUSION................................................................................................................ 21

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*,
    372 F.3d 154 (3d Cir. 2004)..................................................................14

*Burk Dev. Co.* 205 B.R. 778, 799 (Bankr. M.D. La. 1997) ...........................13

*Garneau v. City of Seattle*,
    147 F.3d 802 (9th Cir. 1998) ................................................................19

*In re A.H. Robins Co., Inc.*,
    219 B.R. 145 (Bankr. E.D. Va. 1998).....................................................7

*In re BankEast Corp.*,
    132 B.R. 665 (Bankr. D.N.H. 1991) .......................................................6

*In re Beechknoll Nursing Homes*,
    206 B.R. 886 (Bankr. S.D. Ohio 1997) (reversed on other grounds) ................16, 19

*In re Betwell Oil & Gas Co.*,
    204 B.R. 817 (Bankr. S.D. Fla. 1997) ..............................................12, 13

*In re C n' B of Florida, Inc.*, 198 B.R. 836 839 (Bankr. M.D. Fla. 1996), *rev'd sub
    nom.*, 217 B.R. 303 (M.D. Fla. 1997) ....................................................13

*In re Celebrity Duplicating Servs.*,
    216 B.R. 942 (C.D. Cal. 1997), *rev'd, In re Celebrity Home Entertainment,
    Inc.*, 210 F.3d 995 (9th Cir. 2000) ........................................................15

*In re Charter Behavioral Health Sys., LLC*,
    292 B.R. 36 (Bankr. D. Del. 2003) .........................................................12

*In re Clayton*,
    1995 U.S. App. LEXIS 43364 (5th Cir. Oct. 15, 1996)...........................6

*In re Continental Airlines*,
    236 B.R. 318 (Bankr. D. Del. 1999) .......................................................14

*In re Gates Cmty. Chapel of Rochester, Inc.*,
    212 B.R. 220 (Bankr. W.D.N.Y. 1997) ..............................................6, 18

*In re Genesis Health Ventures, Inc.*,
    402 F.3d 416 (3d Cir. 2005)............................................................12, 15

*In re Ginko Assocs., L.P.*,
2009 Bankr. LEXIS 2765 (Bankr. E.D. Pa. June 25, 2009) .......................................6

*In re Gould*,
437 B.R. 34 (Bankr. D. Conn. 2010) ....................................................................6

*In re Greenley Energy Holdings, Inc.*,
110 B.R. 173 (Bankr. E.D. Pa. 1990) ..................................................................14

*In re GSE Envtl., Inc.*,
No. 14-11126 (Bankr. D. Del. June 24, 2016)..........................................................8

*In re Jenny Lynn Mining Co.*,
780 F.2d 585 (6th Cir. 1986) ...........................................................................18

*In re JMP-Newcor Int'l, Inc.*,
225 B.R. 462 (Bankr. N.D. Ill. 1998) ..................................................................9

*In re Kindred Healthcare, Inc.*,
2003 Bankr. LEXIS 1308 (Bankr. D. Del. 2003) ......................................16, 18, 19

*In re Maruko Inc.*,
206 B.R. 225 (Bankr. S.D. Cal. 1997), *rev'd, In re Maruko, Inc.*, 219 B.R. 567
(S.D. Cal. 1997) ........................................................................................15

*In re Mold Makers, Inc.*,
124 B.R. 766 (Bankr. N.D. Ill. 1990) ....................................................................6

*In re Munford, Inc.*,
216 B.R. 913 (Bankr. N.D. Ga. 1997) ..................................................................14

*In re Nassau Tower Realty, LLC*,
518 B.R. 842 (Bankr. D.N.J. 2014) ......................................................................16

*In re Omega Optical, Inc.*,
476 B.R. 157 (Bankr. E.D. Pa. 2012) ....................................................................6

*In re Postconfirmation Fees*,
224 B.R. 793 (E.D. Wa. 1998)............................................................................18

*In re Seaescape Cruises, Ltd.*,
201 B.R. 321 (Bankr. S.D. Fla. 1996) ..................................................................15

*In re SLI, Inc.*,
Case No. 02-12608 (WS), 2005 WL 1668396 (Bankr. D. Del. June 24, 2005) .......................6

*In re Wintersilks, Inc.*,
243 B.R. 351 (Bankr. W.D. Wis. 1999)..........................................................14, 19

*INS v. St. Cyr*,
  533 U.S. 289, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001) ....................................... 19

*Massachusetts v. United States*,
  435 U.S. 444 (1978) ................................................................................................ 18

*National Cable Television v. United States*,
  415 U.S. 336 (1974) ................................................................................................ 18

*Pettibone Corp. v. Easley*,
  935 F.2d 120 (7th Cir. 1991) ................................................................................... 8

*United States Tr. v. Gryphon at Stone Mansion*,
  166 F. 3d 552 (3d Cir. 1999) ................................................................................... 18

*United States v. Sperry Corp.*,
  493 U.S. 52 (1989) .................................................................................................. 18

*Walnut Assocs. v. Saidel*,
  164 B.R. 487 (E.D. Pa. 1994) ................................................................................. 6

*Walton v. Post-Confirmation Comm. of Unsecured Creditors of GC Cos. (In re GC Cos.)*,
  298 B.R. 226 (Bankr. D. Del. 2003) ....................................................................... 12

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
  449 U.S. 155 (1980) ................................................................................................ 19

## STATUTES

11 U.S.C. § 350(a) .......................................................................................................... 5, 6

11 U.S.C. § 350(a) .......................................................................................................... 9, 21

11 U.S.C §150(a) ............................................................................................................. 1

11 U.S.C. § 1101 ............................................................................................................. 7

11 U.S.C. § 1101(2) ........................................................................................................ 6, 7

11 U.S.C. §1127(b) ......................................................................................................... 7

11 U.S.C. § 1129(a)(11) .................................................................................................. 16

11 U.S.C. § 1142(b) ........................................................................................................ 14

28 U.S.C. 1930(a)(6) ....................................................................................................... 19

28 U.S.C. § 157(b) .......................................................................................................... 1

iv

28 U.S.C. § 586 ...................................................................................................................17

28 U.S.C. § 586(a)(3)(B) .....................................................................................................17

28 U.S.C. § 1334 ...................................................................................................................1

28 U.S.C. § 1408 ...................................................................................................................1

28 U.S.C. § 1409 ...................................................................................................................1

28 U.S.C. § 1930 ........................................................................................................... passim

28 U.S.C. § 1930(a)(6) ................................................................................................. passim

28 U.S.C. § 1930(d) ...........................................................................................................1, 5

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 3022 ....................................................................................................5, 6, 9

Fed R. Bankr. P. 3022 ...........................................................................................................6

Fed R. Bankr. P. 5010 ...........................................................................................................9

H.R. REP. NO. 104-676 (1996) ............................................................................................16

HR Rep No. 764, 99th Cong. 2d Sess. 26 (1986)) ..............................................................16

L.R. 2002-1(f)(ix) .................................................................................................................9

L.R. 3022-1(a) .......................................................................................................................5

L.R. 3022-1 ............................................................................................................................1

L.R. 3022-1(c) .....................................................................................................................21

L.R. 2002-1(b) .....................................................................................................................21

NewPage Corporation ("NewPage") hereby submits this motion (the "Motion"), pursuant to sections 105(a) and 350(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3022-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of a final decree, substantially in the form attached hereto as **Exhibit A**, (a) closing NewPage's chapter 11 case (the "Chapter 11 Case"), (b) terminating certain claims and noticing services provided by Kurtzman Carson Consultants LLC ("KCC"), (c) establishing the amount of fees owed to the United States Trustee (the "U.S. Trustee") pursuant to 28 U.S.C. § 1930(a)(6), and (d) granting related relief.  In support of this Motion, NewPage respectfully states as follows:

## JURISDICTION AND VENUE

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A.    General**

2.    On September 7, 2011 (the "NewPage Commencement Date"), NewPage and those of its subsidiaries and affiliates that were formerly debtors and debtors in possession (the "Reorganized Debtors")[1] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "NewPage Chapter 11 Cases").

3.    On December 14, 2012, this Court entered an order [ECF No. 2945] (the "Confirmation Order") confirming the *Debtors' Modified Fourth Amended Joint Chapter 11*

---

[1]  When referring to acts or events that occurred during the period where these entities were debtors and debtors in possession, the entities are referred to as the "Debtors."

*Plan* [ECF No. 2904] (the "<u>Plan</u>").[2]  Among other things, the Confirmation Order provided for the dismissal of the chapter 11 cases of the Non-Proponent Debtors (*i.e.*, NewPage Group Inc. and NewPage Holding Corporation), as of the effective date of the Plan (*i.e.*, December 21, 2012, or the "<u>Effective Date</u>").[3]  *See* Confirmation Order ¶ 45.

4.  On November 12, 2013, this Court entered a final decree [ECF No. 4482] (the "<u>First NewPage Final Decree</u>"), granting the *Closing Debtors' Motion, Pursuant to Sections 105(a) and 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022, for Entry of Final Decree Closing the Closing Debtors' Chapter 11 Cases* [ECF No. 4423].  The First NewPage Final Decree closed the chapter 11 cases of the following entities: (i) Chillicothe Paper Inc.; (ii) Escanaba Paper Company; (iii) Luke Paper Company; (iv) NewPage Consolidated Papers Inc.; (v) NewPage Energy Services LLC; (vi) NewPage Wisconsin System Inc.; (vii) Rumford Paper Company; (viii) Upland Resources, Inc.; (ix) Wickliffe Paper Company LLC; (x) NewPage Canadian Sales, LLC; and (xi) NewPage Port Hawkesbury Holding LLC.  The First NewPage Final Decree also closed the chapter 11 cases of (xii) NewPage Holding Corporation and (xiii) NewPage Group, Inc., *nunc pro tunc* as of the Effective Date, pursuant to paragraph 45 of the Confirmation Order.  After the First NewPage Final Decree, NewPage became the sole surviving chapter 11 case of the Reorganized Debtors.

5.  On January 7, 2015, Verso Corporation and certain of its affiliates (collectively, "<u>Verso</u>") acquired NewPage and certain of its affiliates.  On January 26, 2016 (the "<u>Verso Commencement Date</u>"), NewPage filed a subsequent chapter 11 case in this Court as part of the jointly-administered cases styled *In re Verso Corporation* [Case No. 16-10163 (KG)] (the "<u>Verso Chapter 11 Cases</u>").  On June 23, 2016, the Court entered an order confirming the

---

[2]  Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan.

[3]  *See* Notice of Effective Date [ECF No. 2904].

*Debtors' First Modified Third Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code* in the Verso Chapter 11 Cases [Case No. 16-10163 (KG), ECF No. 1223].

6.      On March 27, 2018, this Court entered a final decree [Case No. 16-10163, ECF No. 1865] (the "Verso Final Decree"), closing NewPage's chapter 11 case in connection with the Verso Chapter 11 Cases.  After the Verso Final Decree, NewPage remains the sole surviving chapter 11 case of the Reorganized Debtors in connection with the original NewPage Chapter 11 Cases filed in 2011.

**B.      Claims Reconciliation and Distributions**

7.      Pursuant to the Plan, the trustee of the Litigation Trust (the "Litigation Trustee") has the sole authority to prosecute and/or settle General Unsecured Claims, with the exception of certain General Unsecured Claims that were identified in "Annex C" of the Litigation Trust Agreement (the Reorganized Debtors preserved their rights to prosecute and settle such claims).[4]

8.      Since its appointment, the Litigation Trustee has successfully resolved all General Unsecured Claims filed in the Debtors' chapter 11 cases and has commenced 1,128 adversary proceedings, of which all but one have been fully resolved (such remaining matter, the "ERCO Matter").[5]  Also, the Reorganized Debtors have long completed their claims administration process, including with regard to the General Unsecured Claims that the Reorganized Debtors preserved their rights to prosecute and settle.

---

[4]  *See* Section 7.1.1 of the Plan; Section 1.6(c) of the Litigation Trust Agreement.  The Litigation Trust Agreement was filed as Schedule 1.2.95 to the *Amended Plan Supplement to the Debtors' Modified Fourth Amended Joint Chapter 11 Plan* [ECF No. 2909].

[5]  *PIRINATE Consulting Group LLC, as Litigation Trustee of the NP Creditor Litigation Trust v. ERCO Worldwide, a Division of Superior Plus LP*, Adv. Proc. No. 13-52435 (KG).

C.      **The United States Trustee Fees**

9.      From the NewPage Commencement Date until the Verso Commencement Date, NewPage paid the maximum fee of $30,000, based on its disbursements, every quarter to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6).[6]

10.     After the Verso Commencement Date, it was unclear how much, if any, NewPage should pay in U.S. Trustee fees in connection with its Chapter 11 Case filed in 2011 in order to avoid double counting of disbursements in the two cases.  In an email dated March 8, 2016 (located in the email chain attached hereto as **Exhibit B**), the Office of the U.S. Trustee emailed counsel for NewPage to clarify the uncertainty, stating that "[t]he original filing of NewPage 11-12804 will incur the minimum fee of $325 until the case is closed/final decreed.  Post confirmation report for the above referenced case should disclose this to avoid double-counting disbursements for the period."

11.     Since the Verso Commencement Date, NewPage has complied with the agreement it made with the U.S. Trustee and has paid $325 in fees every quarter (the "U.S. Trustee Fees") through and including the fourth quarter of 2018 (*i.e.*, the last quarter NewPage expects to pay U.S. Trustee fees before closing the Chapter 11 Case).

D.      **The Litigation Trust's Wind-up Motion**

12.     With only one remaining litigation matter pending (the ERCO Matter), the Litigation Trustee filed the *Motion of Litigation Trustee, Pursuant to Bankruptcy Code section 105(a), for Entry of Order (I) Implementing Wind-up Procedures and (II) Extending Litigation Trust* [ECF No. 5136] (the "Wind-up Motion") on July 20, 2018.  The Litigation Trustee has

---

[6] The U.S. Trustee fees owed for the fourth quarter of 2015 (*i.e.*, the quarter immediately prior to the Verso Commencement Date) have been treated as a prepetition claim in the Verso Chapter 11 Cases and will be paid pursuant to the chapter 11 plan thereunder.

indefinitely extended NewPage's deadline to object to the Wind-up Motion pending the outcome of this Motion.

## **RELIEF REQUESTED**

13.     By this Motion, NewPage seeks entry of a final decree, substantially in the form attached hereto as **Exhibit A** (the "Final Decree"), (a) closing its Chapter 11 Case, while retaining jurisdiction to hear and determine the ERCO Matter, (b) terminating certain claims and noticing services provided by Kurtzman Carson Consultants LLC ("KCC"), (c) establishing the amount of fees owed to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), and (d) granting related relief.

## **BASIS FOR RELIEF**

### A.     **The Chapter 11 Case Has Been Fully Administered**

14.     Bankruptcy Code section 350(a) provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Further, Bankruptcy Rule 3022 provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." Fed. R. Bankr. P. 3022. Lastly, Local Rule 3022-1(a) provides that "[u]pon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been fully administered provided that all required fees due under 28 U.S.C. § 1930 have been paid." D. Del. Bankr. L.R. 3022-1(a).

15.     According to the 1991 Advisory Committee Note to Bankruptcy Rule 3022, factors that the court should consider in determining whether an estate has been fully administered include:  (a) whether the order confirming the plan has become final; (b) whether deposits required by the plan have been distributed; (c) whether the property proposed by the plan to be transferred has been transferred; (d) whether the debtor or the successor of the debtor

under the plan has assumed the business or the management of the property dealt with by the plan; (e) whether payments under the plan have commenced; and (f) whether all motions, contested matters, and adversary proceedings have been finally resolved.  *See* Fed. R. Bankr. P. 3022, Advisory Committee Notes (1991); *In re SLI, Inc.*, Case No. 02-12608 (WS), 2005 WL 1668396, at *2 (Bankr. D. Del. June 24, 2005); *In re Omega Optical, Inc.*, 476 B.R. 157, 167 (Bankr. E.D. Pa. 2012); *In re Ginko Assocs., L.P.*, 2009 Bankr. LEXIS 2765, at *4 (Bankr. E.D. Pa. June 25, 2009).

16.    Courts have adopted the view that "these factors are but a guide in determining whether a case has been fully administered, and not all factors need to be present before the case is closed."  *In re SLI, Inc.*, Case No. 02-12608 (WS), 2005 WL 1668396, at *2 (Bankr. D. Del. June 24, 2005) (citing *In re Mold Makers, Inc.*, 124 B.R. 766, 768-69 (Bankr. N.D. Ill. 1990)); *see also In re Clayton*, 1995 U.S. App. LEXIS 43364, at *2-3 (5th Cir. Oct. 15, 1996).

17.    Courts have also considered the additional factor of whether a debtor's plan of reorganization has been substantially consummated.[7]  *See, e.g.*, *In re Gould*, 437 B.R. 34, 40 (Bankr. D. Conn. 2010) (finding that a debtor's bankruptcy case was fully administered for purposes of Bankruptcy Code section 350(a) and a final decree was warranted where the plan was confirmed and its terms were substantially consummated); *In re Gates Cmty. Chapel of Rochester, Inc.*, 212 B.R. 220, 224 (Bankr. W.D.N.Y. 1997) (considering substantial consummation as a factor in determining whether to close a chapter 11 case); *Walnut Assocs. v. Saidel*, 164 B.R. 487, 493 (E.D. Pa. 1994) (citing *In re BankEast Corp.*, 132 B.R. 665, 668 n.3 (Bankr. D.N.H. 1991), in which the court "deem[ed] a chapter 11 estate to be 'fully

---

[7]    Bankruptcy Code section 1101(2) defines "substantial consummation" as follows:  (a) transfer of all or substantially all of the property proposed by the plan to be transferred; (b) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (c) commencement of distribution under the plan.  *See* 11 U.S.C. § 1101(2).

administered' pursuant to Bankruptcy Rule 3022 at the point of substantial consummation as defined by [section] 1101(2) of the Bankruptcy Code").

18.      With respect to the Chapter 11 Case, virtually all of the factors have been satisfied, making it appropriate for the Court to enter a final decree closing such case.  Among other things: (a) the Confirmation Order has become final and non-appealable; (b) the deposits required by the Plan (*e.g.*, the proceeds of the Exit Financing) have been distributed; (c) all property proposed to be transferred under the Plan has been transferred; (d) on and after the Effective Date, the Reorganized Debtors assumed the business and management of the property dealt with by the Plan; (e) distributions to claimholders under the Plan are complete (other than one final distribution to be made by the Litigation Trust upon resolution of the ERCO Matter); and (f) all motions and contested matters, and all but one adversary proceeding (the ERCO Matter) have been finally resolved.  Further, the Plan has been substantially consummated given factors (c), (d), and (e).[8]  *See* 11 U.S.C. § 1101(2).  Thus, the foregoing factors support closure of the Chapter 11 Case.

19.      In addition, closing the Chapter 11 Case will relieve NewPage's estate of the obligation to pay quarterly fees under 28 U.S.C. § 1930(a)(6), as well as any other administrative burdens related thereto.  *See* Plan § 14.5 (requiring payment of statutory fees due under 28 U.S.C. § 1930 "until entry of a final decree closing the Case"); *see also In re A.H. Robins Co., Inc.*, 219 B.R. 145, 149 (Bankr. E.D. Va. 1998) (finding that "the obligation to pay [U.S. Trustee] fees terminates upon closure, dismissal, or conversion of a chapter 11 case, and will not be paid *ad infinitum*").  Indeed, all expenses arising from the administration of the Chapter 11

---

[8]    The Confirmation Order even expressly provides that "[u]pon the satisfaction or waiver of the conditions contained in Section 11.1 of the Plan, the occurrence of the Effective Date, and the commencement of Distributions under the Plan, substantial consummation of the Plan, within the meaning of sections 1101 and 1127(b) of the Bankruptcy Code, shall be deemed to have occurred without further order of this Court." Confirmation Order ¶ 8.

Case, including court fees, U.S. Trustee fees (see discussion below), and professional fees and expenses, have been paid or will be paid in the amounts due as soon as reasonably practicable after the closure of the Chapter 11 Case, and NewPage will complete all remaining quarterly reports within thirty (30) days of closure of its Chapter 11 Case.

20.     Here, there is one adversary proceeding—the ERCO Matter—which remains pending as of the date of this Motion.  This poses no bar to closing the Chapter 11 Case.  Courts have routinely granted analogous relief on similar bases in others cases in this and other jurisdictions under chapter 7 or 11 of the Bankruptcy Code.  *See, e.g.*, *In re DEB Stores Holding LLC, et al.*, No. 14-12676 (Bankr. D. Del. June 28, 2018) (KG) [ECF Nos. 1711 & 1712] (dismissing bankruptcy cases while retaining court's jurisdiction over two pending adversary proceedings that "will remain open following the entry of the order dismissing these chapter 11 cases and will be administered by the Wind Down Agent"); *In re GSE Environmental, Inc.*, No. 14-11126 (Bankr. D. Del. June 24, 2016) [ECF Nos. 604 & 613] (motion for entry of final decree granted where "Reorganized Debtors . . . acknowledge that the Sorrentino Adversary Proceeding and the Sorrentino Claim remain unresolved at this point and . . . request that the Court retain jurisdiction to hear and determine these matters after entry of the Final Decree"). Indeed, the Bankruptcy Court for the Northern District of Illinois has eloquently addressed this precise issue:

> The Debtor's plan has been confirmed and it is undisputed by anyone with standing to be heard on this matter that the Debtor has taken all actions required by the plan.  The only matters remaining are certain disbursements to be made under the plan and an adversary proceeding.  The Court does not believe these matters warrant keeping this case open.  No creditor due to receive a distribution under the plan has objected to closing the case.  As recognized by the Seventh Circuit, 'once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval.'  *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991).  In addition, a 'court should not keep [a] case open only because of the possibility that the court's jurisdiction

> may be invoked in the future.' Bankr. R. 3022 advisory committee's note (1991).
> Further, the Debtor's motion requests that the court retain jurisdiction over the
> pending adversary matter. This appears to be a reasonable compromise between
> the policy against delaying the closing of cases and the need for the Court to
> adjudicate pending matters ancillary to the administration of the bankruptcy
> estate. Hence, the Court will grant the Debtor's motion.

*In re JMP-Newcor Int'l, Inc.*, 225 B.R. 462, 465 (Bankr. N.D. Ill. 1998).

21.     For all of the foregoing reasons, NewPage submits that (a) its Chapter 11 Case

has been "fully administered" within the meaning of Bankruptcy Code section 350(a), (b) there

is no reason to keep the Chapter 11 Case open, and (c) it is appropriate for this Court to enter a

final decree closing the Chapter 11 Case. Under the circumstances, no party will be prejudiced

by this relief. Lastly, if circumstances warrant, Bankruptcy Code section 350(b) and Bankruptcy

Rule 5010 permit the Court to reopen the Chapter 11 Case in the future, as appropriate.[9]

## B.     Terminating Claims and Noticing Services

22.     NewPage also requests entry of an order terminating the claims and noticing

services (the "Claims and Noticing Services") provided by KCC pursuant to the *Order on*

*Debtors' Application, Pursuant to 28 U.S.C. § 156(c), Bankruptcy Rule 2002 and Local Rule*

*2002-1(f), for Order (I) Authorizing the Employment and Retention of Kurtzman Carson*

*Consultants LLC as Claims and Noticing Agent for the Debtors and (II) Appointing Kurtzman*

*Carson Consultants LLC as an Agent of the Bankruptcy Court* [ECF No. 61] (the "KCC

Retention Order"). Upon termination of the Claims and Noticing Services, and except as

otherwise provided herein, KCC shall have no further obligations under the KCC Retention

Order to the Court, the Reorganized Debtors, the Debtors' estates, or any other party in interest

with respect to the Claims and Noticing Services in these chapter 11 cases.

---

[9] Notably, "[t]he court should not keep [a] case open only because of the possibility that the court's jurisdiction may be invoked in the future." Fed. R. Bankr. P. 3022, Advisory Comm. Note (1991).

23.     Local Rule 2002-1(f)(ix) requires KCC to, within twenty-eight (28) days of entry of a final decree, (a) forward to the Clerk of the Court an electronic version of all imaged proofs of claim, (b) upload the creditor mailing list into CM/ECF, and (c) file a Final Claims Register containing claims asserted in all of the chapter 11 cases on the docket of Case No. 11-12804 (KG)) (the "Main Case").   KCC will also box and deliver all original proofs of claim to the Philadelphia Federal Records Center, 14700 Townsend Road, Philadelphia, Pennsylvania 19154 and file a completed SF-135 Form indicating the accession and location numbers of the archived claims.

## C.     The Payment of the U.S. Trustee Fees was Proper

### 1)     The Email Agreement between NewPage and the U.S. Trustee Warrants Approval of the Motion With Respect to U.S. Trustee Fees

24.     Since the Verso Commencement Date, NewPage has complied with the agreement it made with the U.S. Trustee and has paid the U.S. Trustee Fees every quarter through and including the fourth quarter of 2018 (*i.e.*, the last quarter NewPage expects to pay U.S. Trustee fees before closing the Chapter 11 Case).   Now, however, the U.S. Trustee is taking a contrary position, claiming that NewPage should have reverted back to paying U.S. Trustee fees based on its own disbursements every quarter since the Verso Final Decree.   Such a result would demand that NewPage pay $250,000 in U.S. Trustee fees every quarter since the Verso Final Decree.   NewPage vehemently objects to the current position of the U.S. Trustee, given the U.S. Trustee's instructions were clear that NewPage "will incur the minimum fee of $325 until the case is closed/final decreed."   The language could not be interpreted in any other manner, and NewPage relied on this agreement.   Notably, neither the U.S. Trustee nor NewPage can direct the Litigation Trustee, and therefore, neither party had meaningful control over the duration of

the Chapter 11 Case.  As a result, it was entirely rational for the U.S. Trustee and NewPage to

agree to the payment of the U.S. Trustee Fees "until the case is closed/final decreed."

25.     The current position of the U.S. Trustee is particularly objectionable given that

the maximum U.S. Trustee fee has increased from $30,000 per quarter to $250,000 per quarter as

of January 1, 2018.[10]   Had NewPage known the amount of its fees would increase so

exorbitantly, NewPage would have endeavored to close its Chapter 11 Case earlier, particularly

in light of the limited to no bankruptcy-related activity currently taking place in the Chapter 11

Case.

### 2)     The U.S. Trustee Fees Should be Calculated Without Reference to Post-Confirmation Ordinary Course Disbursements of Reorganized Debtors

26.     Alternatively, even if the Court does not hold the U.S. Trustee to the bargain it

made with the Reorganized Debtor, NewPage should not be required to pay fees on account of

"disbursements" that are completely unrelated to the Chapter 11 Case.  Instead, the U.S. Trustee

fees post-Effective Date should be calculated based solely on post-confirmation disbursements

made pursuant to the plan of reorganization, and not disbursements made in the ordinary course

of business that are entirely divorced from the bankruptcy.  This would align best with the fresh

start policy of bankruptcy law and the statutory framework, as well as with the attenuated nature

of the U.S. Trustee's duties post-confirmation.  It would also avoid the serious constitutional

issues that would arise if the U.S. Trustee sought to impose fees completely unmoored from any

benefit enjoyed by reorganized debtors post-Effective Date.

---

[10] *See* https://www.justice.gov/ust/chapter-11-quarterly-fees.

      *I.   The Court Should Follow the Jurisprudence Holding That Only Disbursements Made Pursuant to a Plan are Relevant for Calculating Post-Confirmation Fees.*

27.    In 1996, Congress amended 28 U.S.C. § 1930 to clarify that U.S. Trustee fees remain payable following the confirmation of a plan of reorganization.  Under that section, fees are calculated based on the value of the "disbursements" made by the debtor during each quarter.[11]  The term "disbursements," however, is not defined.  As a result, a significant controversy has arisen as to the type of post-confirmation disbursements made by reorganized debtors that should be considered when calculating U.S. Trustee fees.  While courts have split on the issue,[12] many cases have taken the view that, for the purposes of 28 U.S.C. § 1930(a)(6), post-confirmation quarterly fees should be calculated based only on disbursements made pursuant to the plan of reorganization, not ordinary course disbursements disconnected from the plan.

28.    For example, in *In re Betwell Oil & Gas Co.*, 204 B.R. 817 (Bankr. S.D. Fla. 1997) the U.S. Trustee sought to compel the payment of fees post-confirmation calculated based

---

[11] *See* 28 U.S.C. § 1930(a)(6) (". . . A quarterly fee shall be paid to the United States trustee . . . in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first.  The fee shall be $325 for each quarter in which **disbursements** total less than $15,000 . . . .") (emphasis supplied).

[12] Research did not disclose any cases deciding the issue in the District of Delaware or elsewhere in the Third Circuit.  The only case the Debtors discovered that mentions the issue was *In re Charter Behavioral Health Sys., LLC*, 292 B.R. 36 (Bankr. D. Del. 2003), which noted in dicta that in "cases considering what disbursements must be included in determining quarterly fees post-confirmation, the Courts have held that all disbursements, not simply those to creditors under the plan of reorganization, must be included in the calculation." *Id.* at 45. However, as stated by the Bankruptcy Court in that case, the only "issue presented [for determination] is the proper calculation of [the U.S. Trustee] fee in the case of jointly administered Debtors who use a centralized cash management system by which one of the Debtors pays all the expenses of the other" in a pre-confirmation context.  As such, the statement as to post-confirmation disbursements was unnecessary for the court to render a decision.  Moreover, the court overlooked many cases holding differently and that are cited in the main text of this Motion.  Two other cases within the Third Circuit discuss related issues but, again, do not decide the question at issue here.  *See In re Genesis Health Ventures, Inc.*, 402 F.3d 416, 421-422, 425 (3d Cir. 2005) (stating in dicta that "quarterly fees should be assessed for each Debtor in each case still extant post-confirmation" (without determining or discussing how much those fees should be) when deciding the unrelated issue of whether the reorganized debtors were substantively consolidated); *Walton v. Post-Confirmation Comm. of Unsecured Creditors of GC Cos. (In re GC Cos.)*, 298 B.R. 226 (Bankr. D. Del. 2003) (holding that pre-confirmation fees should be calculated including disbursements made by non-debtor affiliates that paid certain of the debtors' expenses).

on *all* the disbursements of the reorganized debtor, whether connected to the bankruptcy or not. The Bankruptcy Court for the Southern District of Florida disagreed with the U.S. Trustee's calculations.  It held instead that "the only post-confirmation payments which constitute 'disbursements' under § 1930(a)(6) are those payments made pursuant to the debtor's plan." *Id.* at 819.  The court found that this position was "fair" while at the same time it gave "meaning to the post-confirmation obligation imposed by Congress" in 1996, because it ensured the U.S. Trustee received funding for its post-confirmation functions, such as overseeing the consummation of the plan of reorganization. *Id.*

29.     The court rejected the U.S. Trustee's broader view for two reasons.  <u>First</u>, the court held that it would be "grossly unfair to tax the general business operations of a reorganized debtor" to fund the operations of the U.S. Trustee when the U.S. Trustee had almost no continuing role in the reorganized debtor's affairs.  *Id.*  As the court noted, once a plan is confirmed "the reorganized debtor is and should be 'out of bankruptcy,'" and "[n]either, the UST or the Bankruptcy Court is involved in the business operations of the reorganized debtor, except to the extent of insuring that the plan is consummated." *Id.*  The court asked: "[i]f a debtor is no longer operating under court supervision, why would Congress intend for its general business operations to be taxed for the benefit of the UST?"  The answer: Congress did not so intend.

30.     <u>Second</u>, the court pointed out that "[d]uring a Chapter 11 case, the debtor-in-possession's quarterly obligations to the UST are calculated from the operating reports which the debtor-in-possession must file."  However, the court noted, "[n]o operating reports are required after the entry of a confirmation order and there is nothing in the Bankruptcy Code or the amendment to § 1930(a)(6) that provides any authority to compel a debtor to file any such

reports with either the Court or the UST."[13]  As such, the court observed that "[i]f the UST's position was adopted, the Bankruptcy Court would be required to monitor the post-confirmation financial operations of a reorganized debtor to insure that a proper accounting [and payment] is given to the UST," but at the same time "[t]he only way to do so would be to require court supervision and operating reports which are not required by statute or rule."  Given the fact that Congress did not require or even expressly permit any such court supervision, the court held that the U.S. Trustee's position must be wrong.  *Id.*

31.    The Bankruptcy Court for the Western District of Wisconsin adopted the same view in *In re Wintersilks, Inc.*, 243 B.R. 351 (Bankr. W.D. Wis. 1999).  In that case, the court analyzed the jurisprudence on the issue in detail and sided with the cases holding that the U.S. Trustee fees "must be measured by those disbursements made pursuant to the confirmed plan under the plan's express terms and may not be calculated on payments made in the ordinary course of the reorganized debtor's business."  *Id.* at 359.  The court took this view in part "because a post-confirmation debtor is not 'using' the bankruptcy system as it was pre-confirmation, [so] it would be grossly unfair for the debtor to continue to pay quarterly fees based on all post-confirmation ordinary course disbursements."  *Id.* at 358.  The court also reasoned that "a bankruptcy court's post-confirmation jurisdiction only extends as far as the plan of reorganization,"[14] and that the same holds true for the U.S. Trustee: "[p]ost-confirmation, the

---

[13] *Id.  See also Burk Dev. Co.*, 205 B.R. 778, 799 (Bankr. M.D. La. 1997) ("operating reports are not required after confirmation and no authority exists to compel a debtor whose plan has been confirmed to file any such reports with the U.S. Trustee."); *In re C n' B of Florida, Inc.*, 198 B.R. 836, 839 (Bankr. M.D. Fla. 1996), *rev'd sub nom. Walton v. Ser-Com, Inc.*, 217 B.R. 303 (M.D. Fla. 1997) ("The bases for determining the amount owed are the operating reports required to be filed by the Debtor-in-Possession.  No such reports are required after the entry of the Order of Confirmation and neither the Bankruptcy Code nor the Rules furnishes any authority to compel a Debtor whose Plan has been confirmed to file any operating reports with the office of the U.S. Trustee.")

[14] *See also Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 159 (3d Cir. 2004) (the bankruptcy court found "its post-confirmation jurisdiction to be 'extremely limited,'" while it recognized that "it retained post-confirmation jurisdiction over disputes that potentially 'affect the successful implementation and consummation of the plan.'"); *In re Continental Airlines*, 236 B.R. 318 (Bankr. D. Del. 1999) ("Post-

reorganized debtor is no longer under the constant supervision and monitoring of the U.S. Trustee."  Therefore, the court held, in the post-confirmation context the term "disbursements" had to be measured solely by reference to the plan of reorganization.

32.    Other cases have taken the same view, that post-confirmation fees must be calculated without reference to ordinary course disbursements.  *See, e.g., In re Munford, Inc.*, 216 B.R. 913, 918 (Bankr. N.D. Ga. 1997) (agreeing with jurisprudence that "holds that post-confirmation quarterly fees should be computed upon 'disbursements' made pursuant to the confirmed plan.  This group of cases attempts to harmonize the legislative purpose with the reorganized debtor's right to a 'fresh start.'"); *In re Seaescape Cruises, Ltd.*, 201 B.R. 321, 323 (Bankr. S.D. Fla. 1996) (holding that "any payments, distributions, or allocations made by a reorganized debtor after the plan's effective date, in the ordinary course of its business or otherwise, do not constitute 'disbursements' under Section 1930 (a)(6) and cannot serve as a basis upon which the U.S. Trustee may calculate its fee.").

33.    Another line of jurisprudence has gone even further, holding that the term "disbursements" only covers payments made by the bankruptcy estate.  As all post-confirmation disbursements are made by the reorganized debtor (not by the bankruptcy estate, which ceases to exist upon confirmation of the plan), these cases hold that post-confirmation quarterly fees must necessarily be limited to the minimum amount.  *See, e.g., In re Celebrity Duplicating Servs.*, 216 B.R. 942, 944-45 (C.D. Cal. 1997), *rev'd, In re Celebrity Home Entertainment, Inc.*, 210 F.3d 995 (9th Cir. 2000); *In re Maruko Inc.*, 206 B.R. 225, 229-30 (Bankr. S.D. Cal. 1997), *rev'd, In re Maruko, Inc.*, 219 B.R. 567 (S.D. Cal. 1997).  Indeed, one court within the Third Circuit has

---

confirmation, a bankruptcy court has limited jurisdiction . . . courts routinely find that the bankruptcy courts have no jurisdiction over the affairs of the post-confirmation debtor and its creditors, particularly with respect to claims arising post-confirmation."); *In re Greenley Energy Holdings, Inc.*, 110 B.R. 173, 184 (Bankr. E.D. Pa. 1990) ("post-confirmation jurisdiction is limited by Bankruptcy Code § 1142(b) to only those matters the resolution of which are 'necessary for the consummation of the plan.'").

adopted this approach in the pre-confirmation context, although the same reasoning applies in the

post-confirmation context:

> The Court submits that a more appropriate starting point in defining the term "disbursement" under 28 U.S.C. § 1930 is to include all payments from the bankruptcy estate.  However, instead of narrowly limiting disbursements to payments made directly from the bankruptcy estate, the Court suggests that a sensible interpretation is to include as disbursements not only direct payments from a debtor, but also payments that are derived or traceable from estate property . . . .  Moreover, the Court notes that is holding is not inconsistent with the approach taken by the Third Circuit Court of Appeals in *Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Healthcare Ventures, Inc.)*, 402 F.3d 416 (3d Cir. 2005) . . . .  Although the courts in *Genesis Healthcare* and the cases cited therein were not asked to determine the origin of the property paid by third parties, the Court is confident that the Third Circuit would agree that disbursements subject to quarterly U.S. Trustee fees under 28 U.S.C. § 1930 must be derived from property of the bankruptcy estate.

*In re Nassau Tower Realty, LLC*, 518 B.R. 842, 846-47 (Bankr. D.N.J. 2014).

34.     The courts' reasoning in all the above cases is persuasive and should be followed

here.  Requiring reorganized debtors to pay hundreds of thousands of dollars of fees per quarter

following confirmation, based on distributions entirely unrelated to the chapter 11 case, would be

"grossly unfair," and would substantially and unjustifiably impair the policy of bankruptcy law

to give debtors a fresh start by saddling them with very large post-bankruptcy debts.  Indeed, it

could significantly jeopardize the feasibility of plans of reorganization that contemplate a

prolonged post-confirmation period prior to closing the chapter 11 case.[15]  *See* 11 U.S.C. §

1129(a)(11).  It should not be required here.

> ## II.     Restricting the U.S. Trustee Fees to Bankruptcy-Related Distributions Aligns with the Legislative History of the 1996 Amendment to 28 U.S.C. § 1930(a)(6)

35.     Notably, adopting this position would also most closely align with the purpose of

the 1996 amendment, which was to fund the *operations* of the U.S. Trustee's office.  *See, e.g.,*

---

[15] This is especially true with respect to reorganized debtors that confirmed chapter 11 plans before the recent increase in U.S. Trustee fees pursuant to 28 U.S.C. § 1930(a)(6), such as NewPage.

H.R. Rep. No. 104-676 at 29-30 (1996) (stating that the purpose for "the collection of fees" is to "finance program operations" of the U.S. Trustee's office); *see also In re Kindred Healthcare, Inc.,* 2003 Bankr. LEXIS 1308 at *13 (Bankr. D. Del. 2003) ("Congress adopted the fee schedule in section 1930(a)(6) to assure that the UST system was self-funded.") (citing HR Rep No. 764, 99th Cong. 2d Sess. 26 (1986)).

36.    In the post-confirmation context (and even more so post-effective date), the U.S. Trustee's oversight role and responsibilities are incredibly attenuated to the point of being "no longer meaningful." *In re Beechknoll Nursing Homes*, 206 B.R. 886, 888 (Bankr. S.D. Ohio 1997) (reversed on other grounds).[16]  This is also reflected by the fact that the U.S. Trustee's duties outlined in 28 U.S.C. § 586 relate to the administration of a pending chapter 11 case before confirmation and, arguably, the only one which relates to post-confirmation activities is 28 U.S.C. § 586(a)(3)(B): "monitoring plans."  Here, as mentioned above, NewPage's Plan has long been implemented and effective.  No bankruptcy- or plan-related disbursements have been made in years.  Bottom line—no meaningful monitoring of the U.S. Trustee was necessary or applied to the Chapter 11 Case after the Effective Date and certainly not since the first quarter of 2018 (*i.e.*, 6 years after confirmation of the Plan).

37.    Requiring reorganized debtors (entities that, by definition, are only just escaping the dire financial straits that put them into bankruptcy) to fund a select governmental program for which they or their creditors receive no benefit and to which they are no longer imposing any cost would be unjust and beyond what Congress intended.  On the other hand, limiting the fees

---

[16] *See Robiner v. Beechknoll Nursing Homes (In re Beechknoll Nursing Homes)*, 216 B.R. 925 (S.D. Ohio 1997) (reversing the bankruptcy court's determination that U.S. Trustee fees are not payable at all post-confirmation but, critically, failing to address the type of post-confirmation disbursements that should be considered when calculating U.S. Trustee fees).

so they are based only on plan consummation disbursements would directly align them with the U.S. Trustee's remaining functions, thereby satisfying Congress's intent.

> III.    *The U.S. Trustee Fees, which are User Fees (Not Taxes), are Unconstitutional as They Fail to Bear a Reasonable Relation to the Services Provided by the U.S. Trustee to Reorganized Debtors during the Post-Confirmation Period*

38.    The United States Supreme Court has expressly made a distinction between 'taxes' and 'fees.'  It has held that "[t]axation is a legislative function, and Congress, which is the sole organ for levying taxes, may act arbitrarily and disregard benefits bestowed by the Government on a taxpayer and go solely on ability to pay, based on property or income.  A fee, however, is incident to a voluntary act . . . *and connotes a 'benefit' [not shared by other members of society]*." *In re Gates Community Chapel*, 212 B.R. 220, 226 (Bankr. W.D.N.Y. 1997) (*quoting National Cable Television v. United States*, 415 U.S. 336, 340-341 (1974)) (emphasis added); *see also In re Jenny Lynn Mining Co.*, 780 F.2d 585, 589 (6th Cir. 1986) (holding one of the characteristics of a tax, as opposed to a fee, is that a tax is an exaction for public purposes rather than a voluntary payment for a private benefit).

39.    Most courts agree that U.S. Trustee fees are fees, not taxes.  *See, e.g., In re Kindred Healthcare, Inc.*, 2003 Bankr. LEXIS 1308 (Bankr. D. Del. Oct. 9 2003) ("The quarterly fees which the UST seeks are user fees, that is, fees associated with the Debtors' use of the bankruptcy judicial system"); *United States Tr. v. Gryphon at Stone Mansion*, 166 F. 3d 552, 554 (3d Cir. 1999) ("Historically, § 1930(a)(6) set forth a scheme to impose the costs of the United States Trustee Program on its users"); *In re Postconfirmation Fees,* 224 B.R. 793, 795 (E.D. Wa. 1998) (U.S. Trustee system was to be self-funded whereby users, rather than the general public would pay for cost); *In re Gates Community Chapel*, 212 B.R. 220, 226 (Bankr. W.D.N.Y. 1997) (holding that the U.S. Trustee fee system is a fee (not a tax) as it is a benefit shared only by debtors rather than the public at large).

40.     To pass constitutional muster, U.S. Trustee fees (given they are user fees) must bear a "fair approximation of the cost of benefits supplied." *Massachusetts v. United States*, 435 U.S. 444, 463 n. 19 (1978); *United States v. Sperry Corp.*, 493 U.S. 52, 60 (1989) (recognizing that a federal user fee must be a "fair approximation of the cost of benefits supplied."). If they do not fairly approximate the cost of such benefits, then the government's levy of the fee is an impermissible taking of the Reorganized Debtor's property under the Takings Clause of the Fifth Amendment of the United States Constitution. *See Id.*, 493 U.S. at 59-61 (analyzing whether federal fees were a "fair approximation" to determine whether they violated the Takings Clause); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 163 (1980) (finding a Takings Clause violation in a governmental monetary exaction that was "a forced contribution to general governmental revenues . . . not reasonably related to the costs of [any government service]."); *Garneau v. City of Seattle*, 147 F.3d 802, 819 (9th Cir. 1998) (holding that "to pass Takings Clause scrutiny, a user fee need . . . be a "fair approximation of the cost of [government] benefits supplied" and finding that governmental fees imposed on landlords violated the Takings Clause because "[t]he landlords do not receive any government service in exchange for the exaction."); *In re Kindred Healthcare, Inc.*, 2003 Bankr. LEXIS 1308 at *11-16 (Bankr. D. Del. 2003) (analyzing whether U.S. Trustee fees in a different context were a "fair approximation" to determine whether they violated the Takings Clause).

41.     This requirement can only be satisfied for purposes of 28 U.S.C. 1930(a)(6) if post-confirmation disbursements are limited to disbursements made in connection with the chapter 11 case. It is only in relation to the plan that the U.S. Trustee has any meaningful post-confirmation oversight role. To charge a fee based on ordinary course distributions entirely disconnected from the chapter 11 case, relating to activities the U.S. Trustee has no role in

overseeing, would be an unconstitutional levy of a fee that is completely untethered from any "fair approximation of the cost of benefits supplied," and therefore a violation of the Takings Clause.[17]  The Court should favor an interpretation of 28 U.S.C. § 1930(a)(6) that avoids these serious constitutional issues by holding that U.S. Trustee fees—post-confirmation—should only be calculated by reference to bankruptcy-related disbursements.  *See, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 290, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001) ("if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statue is 'fairly possible,' [courts] are obligated to construe the statute to avoid such problems.").

42.     Here, the Effective Date of the Plan occurred approximately six years ago, the Reorganized Debtors have completed their claims administration process, the Litigation Trust will make its final distribution upon resolution of the ERCO Matter and completion of the "Wind-Up Procedures" contemplated by the Wind-up Motion, and the "distributions" appearing on NewPage's post-confirmation quarterly operating reports (which, barring any agreement to the contrary, are used as the basis for calculating the fees) are ordinary course distributions related to Reorganized NewPage and are entirely unrelated to the Chapter 11 Case.

43.     As such, NewPage submits the payment of the U.S. Trustee Fees was proper given: (i) the clear agreement with the U.S. Trustee that NewPage "will incur the minimum fee of $325 until the case is closed/final decreed;" (ii) the sound reasoning in the jurisprudence excluding a reorganized debtor's ordinary course distributions from the definition of "disbursements" for purposes of 28 U.S.C. § 1930(a)(6); (iii) restricting the post-effective date

---

[17] As the courts have noted, following confirmation, reorganized debtors are simply "not 'using' the bankruptcy system as [they were] pre-confirmation. *In re Wintersilks, Inc.*, 243 B.R. 351, 358 (Bankr. W.D. Wis. 1999). *See also In re Beechknoll Nursing Homes*, 206 B.R. 886, 888 (Bankr. S.D. Ohio 1997) (stating that, post-confirmation, the U.S. Trustee's responsibilities are "no longer meaningful."), *rev'd, Robiner v. Beechknoll Nursing Homes (In re Beechknoll Nursing Homes)*, 216 B.R. 925 (S.D. Ohio 1997).

U.S. Trustee fees to bankruptcy-related distributions aligns with the legislative history of the 1996 amendment to 28 U.S.C. § 1930(a)(6); and (iv) the post-effective date U.S. Trustee fees, which are user fees (not taxes), are unconstitutional given they fail to bear a reasonable relation to the services provided by the U.S. Trustee for reorganized debtors during the post-confirmation period.

44.     If this Court, however, determines that NewPage owes more than the U.S. Trustee Fees for each quarter since the Verso Final Decree, NewPage will satisfy any such remaining obligations in compliance with this Court's order.  Indeed, NewPage intends, within a reasonable period of time following entry of the final decree closing the Chapter 11 Case, to (a) pay any additional fees due and payable pursuant to 28 U.S.C. § 1930(a)(6) that are ordered by the Court and (b) file with the Court and serve copies of any final post–confirmation reports on the U.S. Trustee.

**D.     Final Report**

45.     In accordance with the requirements of Local Rule 3022-1(c), a final report (the "Final Report") for NewPage is attached hereto as **Exhibit C**.

**CONCLUSION**

46.     For all of the foregoing reasons, NewPage submits (a) that its Chapter 11 Case has been "fully administered" within the meaning of Bankruptcy Code section 350(a), and (b) it is appropriate for this Court to enter a final decree closing the Chapter 11 Case. Under the circumstances, no party will be prejudiced by this relief.  Notably, if circumstances warrant, Bankruptcy Code section 350(b) permits the Court to reopen the Chapter 11 Case in the future, as appropriate.

## NOTICE

47.    Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to Bank of New York Mellon, as indenture trustee for the 11.375% senior secured first-lien notes due 2014; (c) counsel to the Litigation Trust; and (d) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b).  NewPage submits that no other or further notice need be provided.

## NO PRIOR REQUEST

48.    No prior request for the relief sought in the Motion has been made by NewPage to this or any other court.

WHEREFORE NewPage respectfully requests the Court enter the final decree, granting the relief requested herein and such other relief to NewPage as the Court deems appropriate under the circumstances.

Dated: November 26, 2018  
       Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

 _/s/ Michael R. Seidl_____  
Laura Davis Jones (Bar No. 2436)  
Michael R. Seidl (Bar No. 3889)  
919 N. Market Street, 17th Floor  
P.O. Box 8705  
Wilmington, Delaware 19899-8705 (Courier 19801)  
Telephone: 302.652.4100  
Facsimile: 302.652.4400

-and-

**PROSKAUER ROSE LLP**  
Martin J. Bienenstock  
Ehud Barak  
Chris Theodoridis PROSKAUER  
ROSE LLP  
Eleven Times Square  
(Eighth Avenue & 41st Street) New York,  
NY 10036-8299  
Telephone:  212.969.3000  
Facsimile:  212.969.2900

*Co-Attorneys to NewPage Corporation*

22