**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEWPAGE CORPORATION,[1] | Case No. 11-12804 (KG) |
| Reorganized Debtor. | (Jointly Administered) |
| | Hr'g Date: Dec. 19, 2018, at 9:30 a.m. (ET) |

**NEWPAGE CORPORATION'S REPLY TO RESPONSE OF THE
UNITED STATES TRUSTEE TO MOTION FOR ENTRY OF A FINAL
DECREE (A) CLOSING ITS CHAPTER 11 CASE, (B) TERMINATING
CERTAIN CLAIMS AND NOTICING SERVICES, (C) ESTABLISHING
THE AMOUNT OF FEES OWED TO THE UNITED STATES TRUSTEE
PURSUANT TO 28 U.S.C. § 1930(a)(6), AND (D) GRANTING RELATED RELIEF**

---

[1] The last four digits of NewPage Corporation's federal tax identification number are 6156.  The corporate headquarters of NewPage Corporation is located at 8540 Gander Creek Drive, Miamisburg, OH 45342.

104574149v6

# TABLE OF CONTENTS

**Page**

Preliminary Statement ……………………………………………………………………...1

Reply ……..…………………………………………………………………………………...4

    A.    The Chapter 11 Case Should be Closed Irrespective of the Courts Decision Regarding U.S. Trustee Fees ……………………………….……………….…..4

    B.    The Email Agreement between New Page and the U.S. Trustee Warrants Approval of the Motion With Respect to U.S. Trustee Fees…………..…….…..7

        i.    The Email Agreement is Binding …………………………………….7

        ii.    The U.S. Trustee has the Authority to Enter into Agreements Regarding Quarterly Fees ………………………………………………9

    C.    The Court Should Interpret 28 U.S.C. 1930(a)(6) such that U.S. Trustee Fees are Calculated Based Solely on Bankruptcy-Related Disbursements….....12

        i.    The Jurisprudential Split Regarding 28 U.S.C. 1930 (a)(6) is Extant….12

        ii.    There is No Binding Precedent in the Third Circuit Regarding This Dispute ……………………………………………………………15

        iii.    Calculating U.S. Trustee Fees Based on Bankruptcy-Related Distributions Aligns with the Legislative History of the 1996 Amendment to 28 U.S.C. 1930(a)(6) …………………………………..17

    D.    The U.S. Trustee's Interpretation of 28 U.S.C. § 1930(a)(6) is Unconstitutional …………………………………………………………………19

        i.    User Fees Can Constitute Takings Under the Taking Clause ..……....19

        ii.    To Be Constitutional, User Fees Must Fairly Approximate the Benefits Supplied …………………………………………………….21

        iii.    NewPage's View Aligns with Congressional Intent, which, in any Event, is not the Touchstone for Constitutionality …………………....23

        iv.    No Authority Exists Supporting the View that the Imposition of U.S. Trustee Fees Based on Ordinary Course Disbursements During The Post-Confirmation Period is Constitutional ………………………25

        v.    NewPage Does Not Seeks to Bifurcate 28 U.S.C. § 1930(a)(6) ……....29

Conclusion ………………………………………….……………………………………...30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A. Magnano Co. v. Hamilton*,
   292 U.S. 40 (1934)................................................................20

*Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*,
   372 F.3d 154 (3d Cir. 2004)...................................................30

*Dane v. Jackson*,
   256 U.S. 589 (1921)..............................................................20

*Eastland Partners Ltd. v. Brown (In re Eastland Partners Ltd.)*,
   199 B.R. 917 (Bankr. E.D. Mich. 1996) ................................30

*Ehrlich v. City of Culver City*,
   12 Cal. 4th 854 (Cal. 1996)...................................................21

*Garneau v. City of Seattle*,
   147 F.3d 802 (9th Cir. 1998) .................................................21

*Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Healthcare Ventures, Inc.)*,
   402 F.3d 416 (3d Cir. 2005).....................................14, 15, 16

*Gould v. Morgan*,
   907 F.3d 659 (1st Cir. 2018)..................................................24

*H & L Developers v. Arvida/JMB Partners (In re H & L Developers)*,
   178 B.R. 71 (Bankr. E.D. Pa. 1994) ......................................30

*Henderson Bridge Co. v. Henderson City*,
   173 U.S. 592 (1899)..............................................................20

*Hill-Vu Mobile Home Park v. City of Pocatello*,
   162 Idaho 588 (2017).............................................................21

*IMS Health, Inc. v. Ayotte*,
   490 F. Supp. 2d 163 (D.N.H. 2007).......................................24

*In re 1095 Commonwealth Ave. Corp.*,
   213 B.R. 794 (Bankr. D. Mass. 1997) .....................................5

*In re A.H. Robins Co. Inc.*,
   219 B.R. 145 (Bankr. E.D. Va. 1998).....................................28

*In re Am. Capital Equip., LLC,*
  688 F.3d 145 (3d Cir. 2012)............................................................................19

*In re Beechknoll Nursing Homes,*
  206 B.R. 886 (Bankr. S.D. Ohio 1997)...........................................................17, 22

*In re Brown,*
  2008 Bankr. LEXIS 994 (Bankr. S.D. Tex. Mar. 31, 2008).........................12, 13, 17

*In re Cal Dive Int'l, Inc.*
  2015 Bankr. LEXIS 4540 (Bankr. D. Del. Apr. 20, 2015)........................................9

*In re Campesinos Unidos, Inc.,*
  219 B.R. 886 (Bankr. S.D. Cal. 1998)..............................................................8, 22

*In re DEB Stores Holding LLC, et al.,*
  No. 14-12676 (KG) (Bankr. D. Del. June 28, 2018) [ECF Nos. 1711 & 1712].....................5

*In re Fibermark, Inc.,*
  369 B.R. 761 (Bankr. D. Vt. 2007).....................................................................18

*In re Gould,*
  437 B.R. 34 (Bankr. D. Conn. 2010) ....................................................................7

*In re GSE Envtl., Inc.,*
  No. 14-11126 (MFW)(Bankr. D. Del. June 24, 2016) [ECF Nos. 604 & 613] ........................5

*In re Huff,*
  270 B.R. 649 (Bankr. W.D. Va. 2001) .................................................................28

*In re JMP-Newcor Int'l, Inc.,*
  225 B.R. 462 (Bankr. N.D. Ill. 1998) ...................................................................5

*In re Kindred Healthcare, Inc.,*
  2003 Bankr. LEXIS 1308 (Bankr. D. Del. Oct. 9, 2003) ................................. passim

*In re Kindred Healthcare, Inc.,*
  2003 WL 22327933 (Bankr. D. Del. Oct. 9, 2003) .......................................25, 26

*In re Kroy (Europe) Ltd.,*
  244 B.R. 816 (D. Ariz. 2000).............................................................................28

*In re MainePCS LLC,*
  2010 Bankr. LEXIS 4361 (Bankr. D. Me. June 22, 2010) ...................................10

*In re McLean Square Associates,*
  201 B.R. 436 (Bankr. E.D. Va. 1996).................................................................28

*In re Nassau Tower Realty, LLC*,
   518 B.R. 842 (Bankr. D.N.J. 2014) ....................................................................14, 15, 17, 29

*In re Quality Truck & Diesel Injection Service*,
   251 B.R. 682 (S.D. W. Va. 2000) ..........................................................................................28

*In re Swiss Chalet, Inc.*,
   485 B.R. 47 (Bankr. D.P.R. 2012) ...........................................................................................5

*In re Uncle Bud's*,
   206 B.R. 889 (Bankr. M.D. Tenn. 1997), *rev'd sub nom. Vergos v. Uncle
   Bud's, Inc*., 1998 WL 652542 (M.D. Tenn. Aug. 17, 1998).....................................................9

*In re Union Home & Indus.*,
   374 B.R. 912 (10th Cir. B.A.P. 2007) ......................................................................................7

*In re Uno Rest. Holdings Corp.*,
   2010 Bankr. LEXIS 2931 (Bankr. S.D.N.Y. May 11, 2010)..................................................10

*INS v. St. Cyr*,
   533 U.S. 289 (2001).................................................................................................................17

*Koontz v. St. Johns River Water Mgmt. Dist.*,
   570 U.S. 595 (2013).....................................................................................................19, 20, 21

*Landmark Commc'ns, Inc. v. Virginia*,
   435 U.S. 829 (1978).................................................................................................................25

*Parker v. Barnhart*,
   174 F. Supp. 2d 920 (N.D. Iowa 2001)..............................................................................20, 21

*Sable Commc'ns of Cal. v. Fed. Commc'n Comm'n*,
   492 U.S. 115 (1989).................................................................................................................24

*St. Clair County Home Builders Ass'n v. City of Pell City*,
   61 So. 3d 992 (Ala. 2010).......................................................................................................20

*United States Trustee v. Boulders on the River (In re Boulders on the River)*,
   218 B.R. 528 (Bankr. D. Or. 1997).........................................................................................28

*United States Trustee v. Pettibone Corp.*,
   251 B.R. 335 (N.D. Ill. 2000) ...........................................................................................12, 28

*United States v. Sperry Corp.*,
   493 U.S. 52 (1989)...............................................................................................19, 20, 21, 25

*Vergos v. Uncle Bud's, Inc.*,
   1998 WL 652542 (M.D. Tenn. Aug. 17, 1998) .....................................................................28

*Walton v. Post-Confirmation Comm. of Unsecured Creditors of GC Cos. (In re GC Cos.)*,
  298 B.R. 226 (D. Del. 2003) ..........................................................................................15, 16

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
  449 U.S. 155 (1980) .................................................................................................20, 21, 27

**STATUTES**

11 U.S.C. § 350 ..................................................................................................................18

11 U.S.C. § 350(a) ...............................................................................................................7

11 U.S.C. § 507(a)(2) .........................................................................................................12

11 U.S.C. § 1129(a)(9) ........................................................................................................12

11 U.S.C. § 1129(a)(12) .......................................................................................................18

28 U.S.C. § 586 .............................................................................................................18, 22

28 U.S.C. § 586(a)(3)(B) .............................................................................................. passim

28 U.S.C. § 586(a)(3)(D) .................................................................................................2, 10

28 U.S.C. § 1930 .......................................................................................................... passim

28 U.S.C. § 1930(a)(6) .................................................................................................. passim

31 U.S.C. § 3701(b)(1) ........................................................................................................11

31 U.S.C. § 3701 *et seq.* .....................................................................................................11

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 3022 ..........................................................................................................7

H.R. Rep. No. 99-764, reprinted in 1986 U.S.C.C.A.N. 5227 .......................................23

L.R. 2002-1(b) ....................................................................................................................30

L.R. 3022-1(a) .................................................................................................................1, 6

NewPage Corporation ("NewPage") hereby submits this reply (the "Reply") to the *Response of the United States Trustee* [ECF No. 5159] (the "Response"), filed by the Office of the United States Trustee (the "U.S. Trustee"), to *NewPage Corporation's Motion for Entry of a Final Decree (A) Closing its Chapter 11 Case, (B) Terminating Certain Claims and Noticing Services, (C) Establishing the Amount of Fees Owed to the United States Trustee Pursuant to 28 U.S.C. § 1930(a)(6), and (D) Granting Related Relief* [ECF No. 5151] (the "Motion).[1]   In support of this Reply, NewPage respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Over six years ago, the Court confirmed the *Debtors' Modified Fourth Amended Joint Chapter 11 Plan* [ECF No. 2904] (the "Plan").  The Plan went effective on December 21, 2012.  Since then, virtually every factor meriting case closure has been satisfied, as discussed in the Motion and this Reply, and the Chapter 11 Case has been "fully administered."  *See* Motion ¶ 18.  Nonetheless, the U.S. Trustee now objects to case closure, maintaining that NewPage is delinquent in paying U.S. Trustee fees and should not be permitted to close the Chapter 11 Case while the fee dispute and one adversary proceeding (the ERCO Matter) remain outstanding.  The U.S. Trustee's argument is mistaken and should be rejected.

2.      As a preliminary matter, the Chapter 11 Case should be closed irrespective of the Court's decision regarding U.S. Trustee fees, even if the Court decides to take the fee dispute *sub judice*.  By any metric, NewPage's estate has been fully administered for a long time, NewPage has complied with Local Rule 3022-1(a) in filing the Motion, and NewPage's Chapter 11 Case merits closure according to a wealth of precedent cited in the Motion and discussed below.  The

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

U.S. Trustee's attempt to keep the Chapter 11 Case open to continue assessing hundreds of thousands of dollars in quarterly fees while providing no services to NewPage should be denied.

3.     Regardless, the Court should hold that NewPage's payment of the U.S. Trustee Fees was proper.  NewPage paid the full quarterly amount mandated by the Email Agreement it struck with the U.S. Trustee and in line with the preferable statutory interpretation of 28 U.S.C. § 1930(a)(6).  The U.S. Trustee's attempt to extract hundreds of thousands of dollars more from NewPage, while providing no benefit in exchange, should be rebuffed.

4.     Such a result is appropriate for three reasons.  <u>First</u>, the U.S. Trustee explicitly agreed that it would not charge NewPage more than the minimum amount of section 1930(a)(6) fees: $325 per quarter "until the case is closed/final decreed."  Email Agreement (Motion, Ex. B at 4).  NewPage paid the U.S. Trustee Fees pursuant to this agreement, and that very fact alone should end the matter.  The U.S. Trustee has the authority to interpret 28 U.S.C. § 1930 and, based on its interpretation, assess NewPage the amount of quarterly fees it determines to be appropriate.  *See, e.g.,* 28 U.S.C. § 586(a)(3)(D).  The U.S. Trustee should not be permitted to change its stance on the Email Agreement, particularly when doing so would lead to the inequitable imposition of $250,000 per quarter in fees since the Verso Commencement Date.  Had NewPage known the amount of its fees would increase so exorbitantly, NewPage would have endeavored to close its Chapter 11 Case earlier, particularly in light of the limited to no bankruptcy-related activity currently taking place

5.     <u>Second</u>, despite what the U.S. Trustee argues in the Response, there is ample support for NewPage's statutory interpretation of 28 U.S.C. § 1930(a)(6).  Since there is no binding precedent within the Third Circuit on the issue, the Court is free to adopt the preferable statutory interpretation of 28 U.S.C. § 1930(a)(6) and hold that only bankruptcy-related

2

"disbursements" (as opposed to all ordinary course disbursements no matter how unrelated to the bankruptcy case) should be considered when quantifying U.S. Trustee fees during the post-confirmation period.  The U.S. Trustee argues that NewPage's position bifurcates 28 U.S.C. § 1930(a)(6); however, NewPage's view is the only one that aligns with jurisprudence within the Third Circuit regarding pre-confirmation fees, which holds that disbursements must be "derived or traceable from estate property" to be considered for purposes of section 1930(a)(6).  For the same reason, NewPage's position is also aligned with the 1996 amendment to 28 U.S.C. § 1930(a)(6), which extended the U.S. Trustee fees into the post-confirmation period.[2]  Further, this is the only view consonant with Congress' intent in enacting 28 U.S.C. § 1930(a)(6) to ensure that continuing "users" of the bankruptcy system bear the costs of its operation.  NewPage, as well as all other post-confirmation reorganized debtors, receive *de minimis* benefit from the U.S. Trustee and impose inconsequential costs on the bankruptcy system during the post-confirmation period.  The Court is not required to, and should not, hold that reorganized debtors are obligated to pay up to $250,000 per quarter in U.S. Trustee fees during the post-confirmation period in exchange for little to no measurable benefit.

6.    Third, this Court should hold that U.S. Trustee fees should be determined based on bankruptcy-related disbursements, because to hold otherwise would raise serious concerns about the constitutionality of 28 U.S.C. § 1930(a)(6).  U.S. Trustee fees are "user fees," and under a consistent line of case law, they have to "fairly approximate the cost of benefits supplied" in order to pass muster under the Takings Clause of the U.S. Constitution.  Despite the U.S. Trustee's misconceived arguments suggesting otherwise, this line of case law remains good law, applies to U.S. Trustee's fees, and cannot possibly be satisfied under the U.S. Trustee's

---

[2] While the U.S. Trustee's duties are attenuated during the post-confirmation period, assessment of U.S. Trustee fees based on plan-related disbursements is consistent with the U.S. Trustee's duty to monitor plan implementation. *See* 28 U.S.C. § 586(a)(3)(B).

interpretation of 28 U.S.C. § 1930(a)(6).  The infliction of up to $250,000 in U.S. Trustee fees per quarter on reorganized debtors during the post-confirmation period when such reorganized debtors are receiving substantially no continuing benefit from the U.S. Trustee or the bankruptcy system is not permissible, as it does not fairly approximate any benefits received by any reorganized debtors.  As such, to adopt the U.S. Trustee's interpretation of 28 U.S.C. § 1930(a)(6), which demands the imposition of excessive fees completely untethered from any supplied benefit during the post-confirmation period, would violate the Takings Clause.  The Court should not do this, and instead should interpret 28 U.S.C. § 1930(a)(6) so that post-confirmation U.S. Trustee fees are only calculated based on bankruptcy-related distributions, thereby avoiding any constitutional danger.

7.     For all of the foregoing reasons, NewPage submits that the Court should (i) overrule the Response and (ii) enter a final decree closing the Chapter 11 Case.  In the event that the Court decides to sustain the Response or take the U.S. Trustee fee dispute *sub judice*, however, the Court should still enter a final decree closing the Chapter 11 Case nonetheless. After six years, NewPage is eager to put its Chapter 11 Case to rest and to achieve finality with respect to its unexpected fee dispute with the U.S. Trustee.

## REPLY

### A.    The Chapter 11 Case Should Be Closed Irrespective of the Court's Decision Regarding U.S. Trustee Fees

8.     The Response argues the Motion is premature, relying on the incorrect premise that NewPage's estate has not been fully administered due to its one outstanding adversary proceeding (the ERCO Matter).  *See* Response ¶¶ 18-19.  The Response completely ignores the fact that, by any measure, NewPage's estate has been fully administered and all but one of the six Advisory Committee Note factors have been met.  Further, the Response ignores the three

4

opinions cited in the Motion (two of which were issued by the Bankruptcy Court for the District of Delaware) that plainly support NewPage's position – namely, that a bankruptcy court can close a chapter 11 case while retaining jurisdiction over a pending adversary proceeding.[3]

9.    Indeed, the two cases cited by the Response on this issue support the relief sought in the Motion.  In *In re Swiss Chalet, Inc.*, the Bankruptcy Court for the District of Puerto Rico cites precedent for "courts choosing, for purposes of convenience and efficiency, to close individual Chapter 11 cases prior to completion of payments and entry of discharge.  Again, we believe it is a case-by-case analysis best left to the discretion of the bankruptcy judge."[4] Similarly, in *In re 1095 Commonwealth Ave. Corp.*, the Bankruptcy Court for the District of Massachusetts acknowledged that "*Foodmart* does indeed stand for the proposition that a bankruptcy court can close a case without resolving and terminating jurisdiction over an open adversary proceeding."[5]

10.    The bankruptcy courts in *Swiss Chalet* and *1095 Commonwealth Ave.* denied the case closure motions not because the courts lacked the discretion to grant them, but because the remaining open matters in those cases were too involved and important to justify closing the cases.  Specifically, in *Swiss Chalet*, the debtor acknowledged there were "various important pending matters," and in *1095 Commonwealth Ave.* there were multiple pending appeals.[6] Contrary to the Response's incorrect assertion that "[c]ourts applying the[] various [Advisory

---

[3] *See In re DEB Stores Holding LLC, et al.*, No. 14-12676 (KG) (Bankr. D. Del. June 28, 2018) [ECF Nos. 1711 & 1712] (dismissing bankruptcy cases while retaining court's jurisdiction over two pending adversary proceedings that "will remain open following the entry of the order dismissing these chapter 11 cases and will be administered by the Wind Down Agent"); *In re GSE Envtl., Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. June 24, 2016) [ECF Nos. 604 & 613] (motion for entry of final decree granted where "Reorganized Debtors . . . acknowledge that the Sorrentino Adversary Proceeding and the Sorrentino Claim remain unresolved at this point and . . . request that the Court retain jurisdiction to hear and determine these matters after entry of the Final Decree"); *In re JMP-Newcor Int'l, Inc.*, 225 B.R. 462, 465 (Bankr. N.D. Ill. 1998) (closing chapter 11 case notwithstanding the remaining plan disbursements to be made and an open adversary proceeding).

[4] *In re Swiss Chalet, Inc.*, 485 B.R. 47, 51 (Bankr. D.P.R. 2012).

[5] *In re 1095 Commonwealth Ave. Corp.*, 213 B.R. 794, 795 (Bankr. D. Mass. 1997).

[6] *See Swiss Chalet*, 485 B.R. at 52; *1095 Commonwealth Ave.*, 213 B.R. at 795.

104574149v6

Committee Note] factors have declined to issue a final decree when all litigation was not finally resolved,"[7] there is clear precedent for doing so, and the Court should follow such precedent here.  As indicated in the Motion, virtually all of the Advisory Committee Note factors have been satisfied here, making it appropriate for the Court to enter a final decree closing the Chapter 11 Case.[8]

11.     The Response also argues the Motion should be denied given that NewPage has violated Local Rule 3022-1(a)[9] by seeking a final decree before paying its delinquent U.S. Trustee fees.  *See* Response ¶ 20.  Again, the Response inexplicably ignores critical language in the Motion.  The Motion states that "[s]ince the Verso Commencement Date, NewPage has complied with the agreement it made with the U.S. Trustee and has paid the U.S. Trustee Fees every quarter through and including the fourth quarter of 2018 (*i.e.*, the last quarter NewPage expects to pay U.S. Trustee fees before closing the Chapter 11 Case)."  Motion ¶ 24.  NewPage relied on its agreement with the U.S. Trustee and paid the U.S. Trustee Fees accordingly.  Thus, NewPage has complied with Local Rule 3022-1(a) by paying in full the amount of U.S. Trustee fees that NewPage agreed to pay prior to filing the Motion.  Critically, the Motion also provides that "[i]f this Court . . . determines that NewPage owes more than the U.S. Trustee Fees for each quarter since the Verso Final Decree, NewPage will satisfy any such remaining obligations in compliance with this Court's order."  Motion ¶ 44.  Thus, in the event that the Court orders

---

[7] Response ¶ 19.

[8] *See* Motion ¶ 18 ("Among other things: (a) the Confirmation Order has become final and non-appealable; (b) the deposits required by the Plan (*e.g.*, the proceeds of the Exit Financing) have been distributed; (c) all property proposed to be transferred under the Plan has been transferred; (d) on and after the Effective Date, the Reorganized Debtors assumed the business and management of the property dealt with by the Plan; (e) distributions to claimholders under the Plan are complete (**other than one final distribution to be made by the Litigation Trust upon resolution of the ERCO Matter**); and (f) all motions and contested matters, and all but one adversary proceeding (the ERCO Matter) have been finally resolved.  Further the Plan has been substantially consummated given factors (c), (d), and (e).") (emphasis supplied).

[9] Local Rule 3022-1(a) provides that "[u]pon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been fully administered provided that all required fees due under 28 U.S.C. § 1930 have been paid."  D. Del. Bankr. L.R. 3022-1(a).

NewPage to pay additional fees, the Motion is clear that NewPage will promptly do so in accordance with Local Rule 3022-1(a).

12.     Notably, the Court can close the Chapter 11 Case even if the Court takes the U.S. Trustee fee dispute *sub judice*.  The jurisprudence is clear that U.S. Trustee fees can remain outstanding at the closure of a chapter 11 case.  *See, e.g., In re Gould*, 437 B.R. 34, 39 (Bankr. D. Conn. 2010) ("[N]either the text of [Bankruptcy] Code § 350(a) and [Bankruptcy] Rule 3022, nor the comments and cases that construe 'fully administered,' support the UST's argument that the payment of post-confirmation quarterly fees is imbedded in that concept.  To the contrary, a case is fully administered when a plan is confirmed, and its terms have been substantially consummated.  As of that time, a motion for a final decree is appropriate, and if granted, the case 'shall' be closed.") (internal citations omitted); *In re Union Home & Indus.*, 374 B.R. 912, 918 (10th Cir. B.A.P. 2007) ("[C]ourts have issued final decrees even though there were outstanding fees owed to the United States trustee.").  Consequently, the Motion should be granted and the Chapter 11 Case should be closed irrespective of this Court's decision regarding the U.S. Trustee fees.  There is also no need to delay closing the Chapter 11 Case if the Court chooses to take the U.S. Trustee fee dispute *sub judice*.  Leaving the Chapter 11 Case open to determine the amount of U.S. Trustee fees payable under 28 U.S.C. § 1930(a)(6) will only subject NewPage to additional quarterly fees and would provide no benefit to any party other than the U.S. Trustee.

**B.     The Email Agreement between NewPage and the U.S. Trustee Warrants Approval of the Motion With Respect to U.S. Trustee Fees**

13.     The Court can decide the U.S. Trustee fee dispute without engaging in a statutory interpretation or constitutionality analysis, because the U.S. Trustee is bound by its Email Agreement with NewPage.

*i.*      ***The Email Agreement is Binding***

14.      Given many debtors' complex organizational structures, chapter 11 debtors routinely correspond with the U.S. Trustee regarding the assessment of fees, and rely on such information in evaluating the impact of such fees on the administration of their case.[10]   Here, rather than litigate the propriety of two separate U.S. Trustee fees being assessed against the same entity under 28 U.S.C. § 1930(a)(6)—enabling the U.S. Trustee to receive "two for the price of one" since it only has to examine one entity—NewPage accepted the U.S. Trustee's agreement to only be assessed the minimum fee for the Chapter 11 Case (NewPage 11-12804). The actions of the parties gave effect to the agreement:  NewPage paid the full amount of the U.S. Trustee fees with respect to the NewPage 16-10179 case in connection with the Verso Chapter 11 Cases, and the U.S. Trustee accepted such payments in full satisfaction of fees assessed.  Later, NewPage also trued up and paid all the U.S. Trustee Fees pursuant to the Email Agreement for the Chapter 11 Case (NewPage 11-12804).  It wasn't until counsel for NewPage approached the U.S. Trustee regarding closure of the Chapter 11 Case that NewPage would discover that the U.S. Trustee had changed its mind about the bargain that was struck in the Email Agreement.

15.      Moreover, in reliance on being assessed only a minimum quarterly fee, NewPage did not endeavor to close its Chapter 11 Case sooner even though such relief could have been sought.  The U.S. Trustee now seeks to backtrack on the Email Agreement by assessing the Chapter 11 Case the maximum possible amount under the statute—a change of heart that

---

[10] Indeed, courts have found the U.S. Trustee quarterly fees can have a significant and deleterious impact on the debtor's estate. *See, e.g., In re Campesinos Unidos, Inc.*, 219 B.R. 886, 888 (Bankr. S.D. Cal. 1998)("The imposition of post-petition quarterly fees…jeopardizes the success of the very entities the Chapter 11 process was intended to benefit—the creditors receive less and the reorganized debtor pays out money to the U.S. Trustee which should go to creditors. Compounding the situation is the fact that U.S. Trustees are now demanding post-confirmation reporting and documentation by debtors to justify their post-confirmation fees…[T]he § 1930 amendments create not only an economic drag on a struggling reorganized debtor, but also imposes additional labor demands not related to generating revenue to pay creditors.").

104574149v6

conveniently coincides with the implementation of increased maximum fees from $30,000 to $250,000 per quarter as of January 1, 2018.

16.     But the Email Agreement gives the U.S. Trustee no opportunity to change its stance.  Its language is clear and unambiguous, and the U.S. Trustee makes no attempt to argue otherwise.  The Email Agreement states that "[t]he original filing of NewPage 11-12804 will incur the minimum fee of $325 ***until the case is closed/final decreed***."  *See* Motion, Ex. B. at 4 (emphasis supplied).  The Email Agreement does not provide that the fee for the Chapter 11 Case would revert or otherwise be affected when the NewPage 16-10179 case closed in connection with the Verso Chapter 11 Cases.

     ***ii.    The U.S. Trustee has the Authority to Enter into Agreements Regarding Quarterly Fees***

17.     Because the plain language of the Email Agreement leaves no room for the U.S. Trustee to demand anything but the minimum fee from NewPage until the Chapter 11 Case is closed, the U.S. Trustee is left to contend that it had "no authority" to contract around the application of 28 U.S.C. § 1930 in the first place.  This is inaccurate.  Government agencies can, and do, alter statutory rights and obligations by agreement.  See for example Judge Paine's observation in *dicta* in *In re Uncle Bud's*, 206 B.R. 889 (Bankr. M.D. Tenn. 1997) ("The U.S. Trustee and debtors are free to negotiate the requirement of post-confirmation quarterly fees . . . ."), *rev'd sub nom. Vergos v. Uncle Bud's, Inc.*, 1998 WL 652542 (M.D. Tenn. Aug. 17, 1998); *see also, e.g., In re Cal Dive Int'l, Inc.* 2015 Bankr. LEXIS 4540 (Bankr. D. Del. Apr. 20, 2015) (DIP financing order carving out "quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6), in such amounts *as agreed to by the U.S. Trustee* or as determined by order of this Court...") (emphasis supplied). The U.S. Trustee itself is virtually always involved in

negotiations of plans of reorganization in which its fees under 28 U.S.C. § 1930 are the subject

of the overall compromise.[11]

18.    Further, the U.S. Trustee clearly has authority pursuant to 28 U.S.C. §

586(a)(3)(D) to take any appropriate action with respect to the administration of the bankruptcy

case, including with respect to fees:

> Each U.S. Trustee shall…supervise the administration of cases and
> trustees in cases under chapter 7, 11, 12, 13, or 15 of title 11 by, whenever
> the United States trustee considers it to be appropriate…taking such action
> as the United States trustee deems to be appropriate to ensure that all
> reports, schedules, and fees required to be filed under title 11 and this title
> by the debtor are properly and timely filed.

28 U.S.C. § 586(a)(3)(D).

19.    The Email Agreement that NewPage reached with the U.S. Trustee is analogous

to the situation where a taxpayer seeks a private letter ruling ("PLR") from the Internal Revenue

Service ("IRS") interpreting and applying tax laws to that taxpayer's specific circumstances.

The IRS recognizes that it is bound by a PLR if the taxpayer fully and accurately described the

proposed transaction and carries out the transaction in accordance with such description.[12]  Here,

the U.S. Trustee should also be bound by its Email Agreement resolving NewPage's fee liability

in the Chapter 11 Case.

20.    The Response argues that the U.S. Trustee "cannot negotiate away" the statutory

fees owed pursuant to 28 U.S.C. § 1930(a)(6).  *See* Response ¶ 98.  Even if that were true

---

[11] *See, e.g. In re Uno Rest. Holdings Corp.,* 2010 Bankr. LEXIS 2931 (Bankr. S.D.N.Y. May 11, 2010) (plan of reorganization providing that "[a]ll fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid as and when due *or otherwise pursuant to an agreement between the Reorganized Debtors and the United States Department of Justice, Office of the United States Trustee*, until such time as a Chapter 11 Case for a Debtor shall be closed.") (emphasis supplied); *In re MainePCS LLC*, 2010 Bankr. LEXIS 4361 (Bankr. D. Me. June 22, 2010) (plan of reorganization providing "[e]xcept as may otherwise be agreed by the Office of the United States Trustee, the Debtor (or the Reorganized Debtor) shall continue to pay when due any and all fees under 28 U.S.C. § 1930 until entry of a final decree closing the Debtor's case.")

[12]    Understanding IRS Guidance - A Brief Primer, Internal Revenue Service, available at: https://www.irs.gov/newsroom/understanding-irs-guidance-a-brief-primer (last visited Dec 16, 2018).

104574149v6

(despite the numerous examples of chapter 11 plans indicating the U.S. Trustee could settle the amount of fees payable under 28 U.S.C. § 1930(a)(6)), the NewPage Chapter 11 Cases and Verso Chapter 11 Cases presented a unique situation that was not addressed by the plain terms of the statute.  In clarifying the uncertainty, the U.S. Trustee did not "negotiate away" or waive the statutory fees, but rather assessed the proper amount of fees in a manner that made sense under the circumstances.  Such an agreement cannot be construed as an "impermissible" compromise of the statutory fees.

21.    The U.S. Trustee also bases its supposed lack of authority to compromise its quarterly fees on the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 *et seq.* (the "DCIA").    The U.S. Trustee argues that quarterly fees are "debts owed to the federal government" and that the U.S. Trustee has not been delegated the authority to compromise a claim owed to the government.  Response at 31.  But the DCIA only applies to "claims" or "debts" that have "been determined by an appropriate official of the Federal Government to be owed to the United States."   31 U.S.C. § 3701(b)(1).   At the time the U.S. Trustee entered into the Email Agreement, the amounts in question had not been determined to be owed, because no claim had yet to arise and no fee yet to be assessed.   Indeed, the primary purpose of the email communication was to ascertain the amount that would be owed in the future.   Through the Email Agreement, the U.S. Trustee determined that the amount to be owed, going forward, by NewPage's Chapter 11 Case would be the minimum quarterly fee of $325 until the case is closed/final decreed.  Now that those amounts have come due and the Email Agreement has determined them to be owed in the amount of $325 per quarter, the U.S. Trustee, by its own reasoning, lacks the authority to alter these amounts so as to freshly assert that the maximum fee is now payable pursuant to the DCIA.

104574149v6

22.     In short, the Court should hold the parties to the bargain they originally struck. NewPage's payment of the U.S. Trustee Fees were proper pursuant to the Email Agreement and the U.S. Trustee's authority to negotiate and/or interpret fees payable under 28 U.S.C. § 1930(a)(6).

**C.     The Court Should Interpret 28 U.S.C. 1930(a)(6) such that U.S. Trustee Fees are Calculated Based Solely on Bankruptcy-Related Disbursements**

   *i.*     **The Jurisprudential Split Regarding 28 U.S.C. 1930(a)(6) is Extant**

23.     The Response incorrectly argues that "NewPage presents its argument as though it were still a viable one that this Court could reasonably adopt.   But . . . NewPage's interpretation was uniformly rejected years ago and is no longer good law anywhere in the country."  Response ¶ 81.  In fact, even though the Sixth and Eleventh Circuits implicitly moved on from many of the decisions cited in the Motion, there is other support for NewPage's position. *See In re Brown*, 2008 Bankr. LEXIS 994 (Bankr. S.D. Tex. Mar. 31, 2008).

24.     In *Brown*, during the post-confirmation period, the U.S. Trustee "assert[ed] that 'disbursements' on which the quarterly fees must be paid includes not only Debtor's distributions under the plan, but also Debtor's [ordinary course] expenditures."[13]   The Bankruptcy Court for the Southern District of Texas disagreed with the U.S. Trustee, rejected the reasoning employed by the Sixth and Eleventh Circuits, and held precisely what NewPage requests this Court to hold:

> The only way to harmonize the provisions of 28 U.S.C. § 1930(a)(6) with those of Sections 507(a)(2) and 1129(a)(9) of the Bankruptcy Code is to conclude that 'disbursements' described in 28 U.S.C. § 1930(a)(6) are those disbursed on priority and administrative expense claims, the claims of creditors, and the interests of equity security holders pursuant to the plan.  This court notes the importance of funding the United States Trustee program, and notes that the United States performs a salutary function in cases before the Bankruptcy Court.  The court also notes that Congress

---

[13] *In re Brown*, 2008 Bankr. LEXIS at *4.

intended, through the adoption of the 1996 amendment, to provide for additional revenue to offset the cost of the United States Trustee program. However, this court disagrees with the rationale, first set forth in *Pettibone* and subsequently extended by the Sixth and Eleventh Circuits, that a debtor's post-confirmation operating expenses constitute 'disbursements' under 28 U.S.C. § 1930(a)(6).

*In re Brown*, 2008 Bankr. LEXIS at *9-11 (emphasis supplied).

25.    Further, Collier has laid out this exact issue very eloquently, acknowledging the inherent unfairness of forcing chapter 11 debtors to pay U.S. Trustee fees based on ordinary course expenses during the post-confirmation period:

Congress did not define the concept of 'disbursement' in a chapter 11 case, and so this concept was left to the courts to develop as a concept of the federal common law of bankruptcy . . . . The second main issue turns on the material dispute whether a reorganized debtor is obligated to continue paying quarterly fees after it has substantially consummated its confirmed plan of reorganization.   Or to put the question a little differently: when does a reorganized debtor have the right to stop paying quarterly fees on its disbursements to the trustee's office when a chapter 11 case remains open.

If it were only a matter of the continued assessment of quarterly fees until the 60th or 90th day from the effective date under the plan, there would be a persistent but low level of complaining about the unfairness of continuing to pay the quarterly fees when the role of the United States trustee has been substantially reduced.   The major source of friction, however, is attributable to chapter 11 cases in which the confirmed plan for a reorganized debtor provides for the retention of jurisdiction to accomplish a wide variety of litigation goals, including objections to claims [and] the prosecution of various adversary proceedings arising under the Bankruptcy Code, such as the avoidance of fraudulent transfer or insider preferential transfers.

Since these causes of action fall within the exclusive jurisdiction of the Bankruptcy Code, the chapter 11 cases have to remain open until these actions are reduced to a final judgment or settled . . . . [I]n the context of a confirmed chapter 11 case, with an extended period of retained jurisdiction, is the concept of a 'disbursement' limited to payments under the terms of the confirmed plan . . . , or does the concept also extend to payments to creditors whose claims arise after confirmation and in the ordinary course of the reorganized debtor's business? The decisions of the courts are split on this issue of construction.   Some courts construe the

> concept of disbursements as limited to plan payments to priority and administrative expense claims, creditors' claims and equity interests; other courts construe the concept as extending to a fee assessed against all disbursements, whether under a plan or in the ordinary course of the reorganized debtor's business.

1 Collier Compensation, Employment and Appointment of Trustees and Professionals in Bankruptcy Cases ¶ 6.07, at 2-4 (emphasis supplied).

26.    Indeed, one court within the Third Circuit has adopted this approach using sound reasoning that applies in both the pre-confirmation and post-confirmation contexts:

> The Court submits that a more appropriate starting point in defining the term "disbursement" under 28 U.S.C. § 1930 is to include all payments from the bankruptcy estate.  However, instead of narrowly limiting disbursements to payments made directly from the bankruptcy estate, the Court suggests that a sensible interpretation is to include as disbursements not only direct payments from a debtor, but also payments that are derived or traceable from estate property . . . .  Moreover, the Court notes that is holding is not inconsistent with the approach taken by the Third Circuit Court of Appeals in *Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Healthcare Ventures, Inc.)*, 402 F.3d 416 (3d Cir. 2005) . . . .  Although the courts in *Genesis Healthcare* and the cases cited therein were not asked to determine the origin of the property paid by third parties, the Court is confident that the Third Circuit would agree that disbursements subject to quarterly U.S. Trustee fees under 28 U.S.C. § 1930 must be derived from property of the bankruptcy estate.

*In re Nassau Tower Realty, LLC*, 518 B.R. 842, 846-47 (Bankr. D.N.J. 2014) (emphasis supplied).

27.    The Response incorrectly attempts to argue that *Nassau Tower Realty* "provides no support for NewPage's argument."[14]  In reality, the court in *Nassau Tower Realty* provides a well-reasoned, thoughtful framework for defining "disbursements" for purposes of 28 U.S.C. § 1930 and is supportive of NewPage's position.  Specifically, the court suggests that "the U.S.

---

[14] Response, fn. 9.

Trustee . . . consider as disbursements all payments made that originate from estate property, resulting in a more balanced application of 28 U.S.C. § 1930 when assessing quarterly fees."[15]

28.    Under this line of reasoning, U.S. Trustee fees can still be collected during the post-confirmation period, but only when calculated using disbursements <u>derived or traceable</u> from estate property. This is an important distinction – *Nassau Tower Realty* does not follow the rationale in the line of cases holding that the term "disbursements" only covers payments made <u>by</u> the bankruptcy estate, which would effectively repeal the 1996 Amendment to 28 U.S.C. § 1930, given that the bankruptcy estate ceases to exist upon plan confirmation so there could never be any post-confirmation disbursements under that definition. On the other hand, all plan-related disbursements during the post-confirmation period still satisfy the "derived or traceable from estate property" definition from *Nassau Tower Realty*. While the U.S. Trustee's duties are attenuated during the post-confirmation period, assessment of U.S. Trustee fees based on plan-related disbursements is consistent with the U.S. Trustee's duty to monitor plan implementation. *See* 28 U.S.C. § 586(a)(3)(B). As such, *Nassau Tower Realty* provides a useful framework for calculating disbursements that harmonizes NewPage's position with the 1996 Amendment and maintains the constitutionality of 28 U.S.C. § 1930(a)(6).

### ii.    *There Is No Binding Precedent in the Third Circuit Regarding This Dispute*

29.    The Response provides that the District Court for the District of Delaware and "both the Third Circuit and Judge Walrath of this Court have expressly agreed that the term 'disbursements' includes operating expenses." Response ¶¶ 78-79 (citing *In re Genesis Health Ventures, Inc.; In re GC Cos.*; *In re Charter Behavioral Health Sys., LLC*; *In re Kindred Healthcare, Inc.*). Critically, however, all four opinions cited by the Response held that "disbursements" includes operating expenses during the <u>pre-confirmation</u> period. That holding

---

[15] *In re Nassau Tower Realty, LLC*, 518 B.R. at 846.

makes complete sense and is entirely aligned with NewPage's position, given that all operating expenses during the pre-confirmation period are bankruptcy-related expenses. *See* Bankruptcy Code sections 363 and 541.

30.    Specifically, in *Genesis Health Ventures*, two issues were before the Third Circuit: (i) the <u>pre-confirmation</u> issue of whether "disbursements" include operating expenses that are paid by another debtor through a cash management system and (ii) the post-confirmation issue of whether U.S. Trustee fees continue post-confirmation when the debtors' joint plan of reorganization provides that the chapter 11 cases are deemed consolidated.[16]  Critically, the Third Circuit did not decide whether "disbursements" include operating expenses during the post-confirmation period and did not even mention this issue in *dicta*.

31.    Similarly, in *GS Cos.*, the District Court for the District of Delaware decided the same pre-confirmation issue of how to calculate "disbursements" for each debtor when all the expenses of an enterprise are paid by one debtor through a centralized cash management system.[17]  By the same token, in *Charter Behavioral Health Sys.*, the only "issue presented [for determination was] the proper calculation of [the U.S. Trustee] fee in the case of jointly administered Debtors who use a centralized cash management system by which one of the Debtors pays all the expenses of the other" in a <u>pre-confirmation</u> context.

32.    Again in *Kindred Healthcare*, Judge Walrath was presented with the issue of whether "disbursements" include operating expenses that are paid by another debtor through a cash management system during the pre-confirmation period.[18]  Notably, in *Kindred Healthcare* the debtor argued that imposing U.S. Trustee fees pursuant to 28 U.S.C. 1930(a)(6) during the

---

[16] See *Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.)*, 402 F.3d 416, 418 (3d Cir. 2005).

[17] See *Walton v. Post-Confirmation Comm. of Unsecured Creditors of GC Cos. (In re GC Cos.)*, 298 B.R. 226 (D. Del. 2003).

[18] *See In re Kindred Healthcare, Inc.*, 2003 Bankr. LEXIS 1308 (Bankr. D. Del. Oct. 9, 2003).

pre-confirmation period on a debtor that makes no cash outlays but instead has its expenses paid by another debtor through a cash management system amounts to an impermissible taking of property in violation of the Fifth Amendment to the Constitution.[19]    Judge Walrath, in a reasoned, thoughtful opinion, assessed the benefits conferred on chapter 11 debtors in relation to the amount of U.S. Trustee fees that are owed during the pre-confirmation period and ultimately concluded that such fees are a "fair approximation of the cost of benefits supplied."[20]

33.    While NewPage agrees with the result reached in *Kindred Healthcare*, a similar constitutional analysis must be conducted here by this Court for the post-confirmation period if the U.S. Trustee's interpretation of 28 U.S.C. § 1930(a)(6) is adopted such that "disbursements" include non-bankruptcy related ordinary operating expenses.    Adopting the U.S. Trustee's interpretation of 28 U.S.C. § 1930(a)(6) will render the resulting quarterly U.S. Trustee fees unconstitutional during the post-confirmation period.  *See* Reply, Section D below.

34.    The Court can avoid the constitutional analysis, however, by interpreting the term disbursements to only include bankruptcy-related disbursements in accordance with *In re Brown* and *In re Nassau Tower Realty*.  There is no binding precedent regarding this dispute, so the Court is free to adopt the better reasoned approach that avoids these serious constitutional issues. *See, e.g., INS v. St. Cyr*, 533 U.S. 289, 290 (2001) ("[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' [courts] are obligated to construe the statute to avoid such problems.").[21]

---

[19] *See Id.*, at *10-11.

[20] *Id.*, at *14.

[21] Contrary to what the Response argues in paragraph 22, there is serious doubt about the constitutionality of the U.S. Trustee's interpretation of 28 U.S.C. § 1930(a)(6).  The case law provides that user fees that do not fairly approximate the cost of benefits supplied are impermissible takings under the Takings Clause of the U.S. Constitution.  *See* Reply, Section D below.  Further, as shown in this Section C of the Reply, NewPage's

### iii. *Calculating U.S. Trustee Fees Based on Bankruptcy-Related Distributions Aligns with the Legislative History of the 1996 Amendment to 28 U.S.C. 1930(a)(6)*

35. As argued in the Motion, in the post-confirmation context (and even more so post-effective date), the U.S. Trustee's oversight role and responsibilities are incredibly attenuated to the point of being "no longer meaningful." *In re Beechknoll Nursing Homes*, 206 B.R. 886, 888 (Bankr. S.D. Ohio 1997) (reversed on other grounds).[22] This is also reflected by the fact that the U.S. Trustee's duties outlined in 28 U.S.C. § 586 relate to the administration of a pending chapter 11 case before confirmation and, arguably, the only notable duty that relates to post-confirmation activities is 28 U.S.C. § 586(a)(3)(B): "monitoring plans." Bottom line—no meaningful monitoring of the U.S. Trustee is necessary or applied to chapter 11 cases after the effective date of a chapter 11 plan. *See, e.g., In re Fibermark, Inc.*, 369 B.R. 761, 765-67 (Bankr. D. Vt. 2007) (confirmation order "signal[s] the legal conclusion of [a] case," and "is generally regarded as the final court determination in a chapter 11 case," while the final decree "simply delineates on the docket that the case is close; it represents the administrative conclusion of a case for record keeping purposes.") (internal citations omitted).[23]

---

interpretation of 28 U.S.C. § 1930(a)(6) is the only plausible reading of the statute that harmonizes the jurisprudence with Congressional intent and avoids any constitutional risk.

[22] *See Robiner v. Beechknoll Nursing Homes (In re Beechknoll Nursing Homes)*, 216 B.R. 925 (S.D. Ohio 1997) (reversing the bankruptcy court's determination that U.S. Trustee fees are not payable at all post-confirmation but, critically, failing to address the type of post-confirmation disbursements that should be considered when calculating U.S. Trustee fees).

[23] Notably, the Bankruptcy Code states that a chapter 11 plan must provide that "<u>all fees payable under section 1930 of title 28</u>" need to be paid on the effective date. *See* Bankruptcy Code section 1129(a)(12). This language could be interpreted to mean that there can never be fees under section 1930 of title 28 that accrue post-effective date, because they <u>all</u> have to be paid on the effective date. Bankruptcy Code section 1129(a)(12) does not use language such as "all fees then-owing" or "all fees due," but rather uses the general language "all fees payable" (*i.e.*, all the fees that are payable under section 1930 of title 28). Further, the Bankruptcy Code does not mention anything about the payment of fees payable under 28 U.S.C. § 1930 with respect to closing a case, which Congress could have easily decided to incorporate. *See* Bankruptcy Code section 350. Taken together, one could interpret Congress' choice of words to mean that no fees pursuant to 28 U.S.C. § 1930 should accrue at all after the reorganized debtor's effective date. Such a reading is aligned with the 1996 amendment, given that reorganized debtors can languish in a post-confirmation period until they go effective. Thus, Congress' intent by enacting the

36.    Congress, in enacting 28 U.S.C. § 1930(a)(6), intended that the costs of the U.S. Trustee would be borne "by the <u>users</u> of the bankruptcy system."  H.R. Rep. No. 99-764, at 25, reprinted in 1986 U.S.C.C.A.N. 5227, 5238 (emphasis supplied).  Requiring reorganized debtors (entities that, by definition, are only just escaping the dire financial straits that put them into bankruptcy) to fund a select governmental program for which they or their creditors receive no benefit and to which they are only imposing a *de minimis* cost would be unjust and beyond what Congress intended.  On the other hand, calculating the fees based solely on bankruptcy-related disbursements (which, during the post-confirmation period, only apply to plan-related disbursements) would directly align them with the U.S. Trustee's remaining functions and the reorganized debtor's "use" of the bankruptcy system, thereby satisfying Congress' intent. Indeed, interpreting 28 U.S.C. § 1930(a)(6) such that "disbursements" only include bankruptcy-related payments is more attuned to the central "fresh start" and "fundamental fairness and justice" policies underpinning the Bankruptcy Code.  *See, e.g., In re Am. Capital Equip., LLC*, 688 F.3d 145, 156-57 (3d Cir. 2012) ("[U]nder Chapter 11, the two recognized policies, or objectives, are preserving going concerns and maximizing property available to satisfy creditors. More generally, the Bankruptcy Code's objectives include: giving debtors a fresh start in life, discouraging debtor misconduct, the expeditious liquidation and distribution of the bankruptcy estate to its creditors, and achieving fundamental fairness and justice.") (internal citations and quotations omitted).

**D.    The U.S. Trustee's Interpretation of 28 U.S.C. § 1930(a)(6) is Unconstitutional**

---

1996 amendment was to ensure that U.S. Trustee fees are assessed for reorganized debtors for the full amount of time that they use the bankruptcy system (*i.e.*, up until the effective date, but no later).

i. *User Fees Can Constitute Takings Under the Takings Clause*

37.     The Response argues that section 28 U.S.C. § 1930(a)(6) cannot possibly be unconstitutional because a "user fee" can never amount to a taking.  *See* Response at ¶¶ 27-29. To make this argument, the Response relies predominantly on a quote purportedly to that effect in *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 615 (2013) (stating that "[i]t is beyond dispute that '[t]axes and user fees are not . . . 'takings.'"").  The U.S. Trustee is mistaken.

38.     *Koontz*, along with the other jurisprudence cited in the Response, stands for the uncontroversial proposition that user fees and taxes are not *ipso facto* impermissible takings under the Takings Clause, and that user fees and taxes do not have to satisfy the "public use" requirement of the Takings Clause.  *Koontz* does <u>not</u> stand for the proposition that "user fees" can never amount to unconstitutional takings.  This is made clear by the fact that in the same sentence the court positively cites *United States v. Sperry Corp.*, 493 U.S. 52 (1989), another case from the Supreme Court which expressly held that a user fee must "be a fair approximation of the cost of benefits supplied" to pass muster under the Takings Clause.  *Id.* at 61.  Indeed, a host of other cases cited positively by the Supreme Court in *Koontz* expressly held that a tax or a user fee <u>can</u> amount to an impermissible taking.[24]

39.     That a user fee can amount to a taking is made clearer by the wealth of case law that has analyzed user fees to determine whether they are takings prohibited by the Takings Clause.  *See, e.g., Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 163 (1980) (finding a Takings Clause violation in a governmental monetary exaction that was "a forced

---

[24] *See Henderson Bridge Co. v. Henderson City*, 173 U.S. 592, 614 (1899) ("It is conceivable that taxation may be of such a nature and so burdensome as properly to be characterized a taking of private property for public use without just compensation."); *Dane v. Jackson*, 256 U.S. 589, 599 (1921) (stating that a tax could amount to a violation of the Takings Clause "where it proposes, or clearly results in, such flagrant and palpable inequality between the burden imposed and the benefit received, as to amount to the arbitrary taking of property without compensation."); *A. Magnano Co. v. Hamilton*, 292 U.S. 40, 44 (1934) (stating that a tax can amount to a taking in "rare and special instances") (emphasis supplied); *see* Response at ¶ 27 (citing all of the above cases).

contribution to general governmental revenues . . . not reasonably related to the costs of [any government service]."); *United States v. Sperry Corp.*, 493 U.S. 52, 61 (1989) (holding that a user fee must "be a fair approximation of the cost of benefits supplied" to pass muster under the Takings Clause); *Kindred*, 2003 Bankr. LEXIS at *11-16 (analyzing whether U.S. Trustee fees during the pre-confirmation period were a "fair approximation" to determine whether they violated the Takings Clause); *Parker v. Barnhart*, 174 F. Supp. 2d 920, 937-941 (N.D. Iowa 2001) (analyzing whether a user fee was a fair approximation to determine whether it amounted to a taking); *St. Clair County Home Builders Ass'n v. City of Pell City*, 61 So. 3d 992 (Ala. 2010) (same).

40.    The Response misconstrues *Webb's* and argues that the case had nothing to do with user fees. *See* Response at ¶ 66. In reality, the opinion squarely deals with user fees and many opinions have cited *Webb's* accordingly. *See, e.g., Parker v. Barnhart*, 174 F. Supp. 2d 920, 937-941 (N.D. Iowa 2001) (citing *Webb's* as a case on user fees violating the Takings Clause); *United States v. Sperry Corp.*, 493 U.S. 52, 62 (1989) (same); *Garneau v. City of Seattle*, 147 F.3d 802, 816 (9th Cir. 1998) (Williams D.J. concurring) (same); *Ehrlich v. City of Culver City*, 12 Cal. 4th 854, 896 (Cal. 1996) (Mosk J. concurring) (same). In *Webb's*, the Supreme Court considered whether there had been an unconstitutional taking where a county "took as its own, under the authority of a state statute, the interest accruing on an interpleader fund deposited in the registry of the county court." *See Webb's*, 449 U.S. at 155. The Supreme Court held that this was a taking, in large measure because "the exaction is a forced contribution to general governmental revenues, and it is not reasonably related to the costs of using the courts." *Id.* at 163. As such, as one court has noted, the Supreme Court in *Webb's* "concluded that the county could not justify its retention of the interest on the ground that it was a 'fee for

services,' because 'any services obligation to the county was paid for and satisfied by the substantial fee charged pursuant to [another statute] and described specifically in that statute as a fee 'for services' by the clerk's office.'" *Parker v. Barnhart*, 174 F. Supp 2d at 938 (citing *Webb's*, 449 U.S. at 163).

41.    The Supreme Court in *Koontz* gives no indication it intended to depart from this line of case law—indeed, it even cites it approvingly.  As such, it remains the law that a user fee has to be a fair approximation of the benefits supplied to pass muster under the Takings Clause.[25]

### ii.    *To Be Constitutional, User Fees Must Fairly Approximate the Benefits Supplied*

42.    Contrary to the U.S. Trustee's arguments otherwise (*see* Response ¶¶ 60-69), there is serious doubt as to the constitutionality of the U.S. Trustee's interpretation of "disbursements" under 28 U.S.C. § 1930(a)(6) during the post-confirmation period.  That the court in *Sperry* did not find the user fee there (a moderate 1.5% on a compensation award) to be a taking is entirely beside the point: it still required that the user fee be a fair approximation.  The imposition of a fee up to $250,000 per quarter, calculated on the basis of ordinary course disbursements with no connection to the bankruptcy process in return for practically no services is manifestly unreasonable and does not approximate the U.S. Trustee's remaining obligations or the benefits it supplies to a reorganized debtor post-confirmation.

43.    The U.S. Trustee argues that its fees must be constitutional, because "the Constitution does not require a case-by-case correlation between a user fee and either the costs or benefits of the government's services."  Response at ¶¶ 30-36.  NewPage, however, is not arguing that the Constitution requires such a case-by-case analysis.  As NewPage argued in its

---

[25] At least one court has held as much since *Koontz* was decided.  *See Hill-Vu Mobile Home Park v. City of Pocatello*, 162 Idaho 588 (2017).  There, the Supreme Court of Idaho held that a user fee violated the Takings Clause of the United States Constitution as it was not a reasonable charge for services rendered but was excessive, and expressly rejected the argument that "a user fee cannot be subject to the Takings Clause."  *Id.* at 597.

Motion and the U.S. Trustee fails to rebut, the U.S. Trustee's role is highly limited during the post-confirmation period in <u>all</u> bankruptcy cases. Almost all of the U.S. Trustee's duties under 28 U.S.C. § 586 become defunct post-confirmation, and it is substantially only in relation to one—monitoring plans—that the U.S. Trustee remains active. *See* 28 U.S.C. § 586(a)(3)(B). This is true across all bankruptcies, as courts have discussed. *See, e.g., In re Beechknoll Nursing Homes*, 206 B.R. 886, 888, *rev'd on other grounds, Robiner v. Beechknoll Nursing Homes (In re Beechknoll Nursing Homes)*, 216 B.R. 925 (S.D. Ohio 1997) (Bankr. S.D. Ohio 1997) (holding that post-confirmation the U.S. Trustee's oversight role and responsibilities are incredibly attenuated to the point of being "no longer meaningful"); *see also* 1 COLLIER COMP, EMPLOY & APPOINT OF TRUSTEES & PROFS ¶ 6.07 (stating that post-confirmation "the role of the United States trustee has been substantially reduced.").[26] Indeed, the very fact that numerous courts have ruled that bankruptcy cases can be closed when they are in the same stage as NewPage's Chapter 11 Case (*see supra* note 3 and paragraph 6) demonstrates that reorganized debtors no longer meaningfully use the bankruptcy system post-confirmation.

44.     Therefore, the imposition of U.S. Trustee fees up to $1 million dollars annually for non-existent "oversight" amounts to a user fee that does not fairly approximate the cost or benefits supplied, and is unconstitutional.[27] On the other hand, even though the U.S. Trustee's duties are attenuated during the post-confirmation period, assessment of U.S. Trustee fees based on plan-related disbursements in accordance with NewPage's view is consistent with the U.S.

---

[26] Ironically, the main (if not the only) use of the quarterly report filed by reorganized debtors is to determine disbursements and calculate the resulting U.S. Trustee's fees. *See In re Campesinos Unidos, Inc.*, 219 B.R. 886, 888 (Bankr. S.D. Cal. 1998) ("Ironically, if the U.S. Trustee is correct in its expansive definition of "disbursements," the very imposition of post-confirmation fees creates the burdensome accounting and reporting requirement just to calculate the fee which would be due.").

[27] Notably, the constitutionality analysis hinges on the <u>benefits supplied</u>, not the entire cost of the U.S. Trustee system. Even if the U.S. Trustee system experiences financial difficulty, there remains no justification for the imposition of a fee wholly untethered from benefits received by post-confirmation reorganized debtors.

23

Trustee's minimal post-confirmation duties such as monitoring plan implementation. *See* 28 U.S.C. § 586(a)(3)(B).

### iii.    *NewPage's View Aligns with Congressional Intent, which, in any Event, is not the Touchstone for Constitutionality*

45.    The Response mistakenly argues that the U.S. Trustee's interpretation of 28 U.S.C. § 1930(a)(6) is aligned with Congressional intent, and, therefore, the judiciary must uphold the U.S. Trustee's interpretation of the statute as constitutional. Response at ¶¶ 37-47. The U.S. Trustee's argument falls flat for three reasons.

46.    <u>First</u>, as the U.S. Trustee admits, "Congress explicitly mandated the quarterly fee so that the costs of the U.S. Trustee Program would be borne '*by the users of the bankruptcy system*—at no cost to the taxpayer.'" *See* Response at ¶ 40 (citing H.R. Rep. No. 99-764, at 25, reprinted in 1986 U.S.C.C.A.N. 5227, 5238) (emphasis supplied). As Congress made clear, it intended for the cost of the U.S. Trustee program to be borne by its "users." Yet, as discussed above, it is inappropriate to describe a reorganized debtor as "using" the bankruptcy system in any meaningful manner during the post-confirmation period. Indeed, as shown above, there is support for the proposition that Congress intended precisely what NewPage argues – namely, that U.S. Trustee fees post-confirmation should be limited to bankruptcy-related disbursements only. Thus, it is clear that Congressional intent is aligned with NewPage's position, not the U.S. Trustee's position. Further, NewPage's statutory interpretation is aligned with the 1996 amendment to 28 U.S.C. § 1930(a)(6).

47.    <u>Second</u>, the 2017 amendment to 28 U.S.C. § 1930(a)(6) reflects a desire to increase funding for the United States Trustee System Fund. Neither the 2017 amendment nor any prior amendment to 28 U.S.C. § 1930(a)(6) addressed whether the increased fee was a "fair approximation of the benefits" provided to reorganized debtors post-confirmation. As such,

there is not a clear Congressional determination of "fair approximation" to which the judiciary

can defer.

48.    <u>Third</u>, even if Congress did believe the U.S. Trustee's interpretation of 28 U.S.C.

§ 1930(a)(6) was a "fair approximation of benefits" post-confirmation (which Congress did not),

while the U.S. Trustee argues the Court should defer to Congressional judgments, "deference

should not be confused with blind allegiance." *Gould v. Morgan*, 907 F.3d 659, 673-74 (1st Cir.

2018). Indeed, according to the line of case law cited by the U.S. Trustee, such deference is only

appropriate where Congress "conducted an extensive investigation, acquired considerable

expertise in the regulated area, and incorporated express findings into the approved statute." *IMS*

*Health, Inc. v. Ayotte*, 490 F. Supp. 2d 163, 177 n 12 (D.N.H. 2007). The U.S. Trustee does not

present any evidence that Congress conducted "extensive investigations" or incorporated

"express findings" into 28 U.S.C. § 1930(a)(6). As such, deference to Congressional intent is

simply not warranted here. *See, e.g., Sable Commc'ns of Cal. v. Fed. Commc'n*, 492 U.S. 115,

129-30, 109 S. Ct. 2829, 106 L. Ed. 2d 93 (1989) (no deference where legislative record

"contains no evidence as to how effective or ineffective the . . . regulations were or might prove

to be"); *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 843, 98 S. Ct. 1535, 56 L. Ed. 2d 1

(1978) (no deference where statute was devoid of "actual facts" and contained only "legislative

declaration[s]").

iv.    ***No Authority Exists Supporting the View that the Imposition of U.S. Trustee Fees Based on Ordinary Course Disbursements During the Post-Confirmation Period is Constitutional***

49.    The Response incorrectly asserts that "[f]ifteen years ago, following the Supreme

Court's guidance in *Sperry*, Judge Walrath expressly upheld the constitutionality of section

1930(a)(6) against the same taking challenge asserted by NewPage – that quarterly fees exceeded

benefits provided." *See* Response at ¶ 48 (citing *In re Kindred Healthcare, Inc.*, No. 99-3199 (MFW), 2003 WL 22327933, at *3-5 (Bankr. D. Del. Oct. 9, 2003)).

50.     This is simply untrue.  The statutory challenge in *Kindred* is far removed from the challenge here, and the reasoning employed by Judge Walrath in *Kindred* actually supports approval of the Motion.  Specifically, in *Kindred*, which NewPage cites in its Motion and this Reply, the debtors used a consolidated cash management system, whereby "the ultimate parent of the Debtors . . . consolidated all operating revenues of the Debtors and made all disbursements" on their behalf.  *Id.* at *1.  At the start of the case, the U.S. Trustee calculated its fees on the basis that only the parent was making any substantial disbursements.  As such, the U.S. Trustee charged the maximum quarterly fee (then only $10,000) only to the parent, and charged the minimum fee to the other debtors.  *Id.*  Halfway through the case, however, the U.S. Trustee changed how it calculated its fees, and asserted that "the quarterly fees should have been calculated on the disbursements made on behalf of each individual Debtor rather than on [the] consolidated basis" it had previously been using.  *Id.*  The debtors challenged this, in part arguing that the calculation of fees in this manner exacted an unconstitutional taking.  *Id.* at 3.  The court rejected this argument, holding that the $10,000 per-debtor quarterly fee during the pre-confirmation period "is not outrageous when considered as a percentage of the Debtors' disbursements."  *Id.* at *5.

51.     Here, on the other hand, NewPage is challenging a narrow subset of calculated U.S. Trustee fees that was not at issue in *Kindred* – namely, quarterly fees of up to $250,000 (25 times more than the maximum quarterly fee in *Kindred*) that are calculated by reference to non-bankruptcy ordinary course disbursements made by a reorganized debtor during the post-confirmation period.  Such fees were not in issue in *Kindred*, nor were they discussed.  As such,

104574149v6

if this Court adopts the U.S. Trustee's interpretation of 28 U.S.C. § 1930(a)(6) such that "disbursements" include ordinary operating expenses during the post-confirmation period, this Court must then carry out a similar analysis (for the post-confirmation period) to the analysis carried out by Judge Walrath in *Kindred* (for the pre-confirmation period).[28]

52.    An analysis as thorough and reasoned as the one in *Kindred* for the post-confirmation period would necessarily conclude that the U.S. Trustee's interpretation of 28 U.S.C. § 1930(a)(6) is unconstitutional.  The U.S. Trustee is asserting an entitlement to user fees of up to $250,000 per quarter while it provides virtually no services during the post-confirmation period.  This is patently not a "fair approximation," and it is for that reason an impermissible taking in violation of the Constitution.

53.    The Response ineffectively attempts to downplay the magnitude of the U.S. Trustee fees, claiming that "the maximum fee that NewPage is statutorily required to pay for the second and third quarters in 2018 reflects .036% and 0.031% of its disbursements. NewPage cannot credibly claim the fee is excessive."  Response at ¶ 50.  But such calculations presume the result the U.S. Trustee seeks to establish (*i.e.*, the Response calculates the percentage by reference to all of NewPage's ordinary course disbursements, including disbursements not even remotely connected to the bankruptcy case).[29]  If calculated appropriately by reference solely to plan-related disbursements (which are disbursements that are actually connected to the bankruptcy case and in relation to which the U.S. Trustee actually provides services), the $250,000 quarterly fee would far exceed 100% of disbursements.  This is, on any defensible

---

[28] Indeed, Judge Walrath appears to have expressly left open the possibility of other Takings Clause challenges against U.S. Trustee fees being considered unconstitutionally excessive, noting in a footnote that "the minimum fee of $250 could be in excess of 100% of disbursements," but also that the debtor did not argue this point.  *See In re Kindred Healthcare, Inc.*, No. 99-3199 (MFW), 2003 WL 22327933, at *5 n.5 (Bankr. D. Del. Oct. 9, 2003).

[29] Interestingly, reorganized NewPage's disbursements may include enhanced disbursements as a result of NewPage's post-confirmation merger with Verso.

metric, unreasonable and excessive, and it is for this reason the fees amount to an impermissible taking.

54.    The Response further seeks to obscure the issue by noting that NewPage has benefited from the bankruptcy system, as "NewPage twice successfully reorganized under chapter 11" and therefore, according to the U.S. Trustee, "NewPage cannot claim it did not receive government services while it is in bankruptcy." Response at ¶ 51.  The problem for the U.S. Trustee's argument is its "past tense" nature.  NewPage agrees that it benefi<u>ted</u> from the bankruptcy system and from the U.S Trustee's services prior to confirmation.  But NewPage, as with other reorganized debtors, paid millions of dollars for that benefit during the pendency of the case.  It is fallacious to argue that, because reorganized debtors received a benefit in the past, which such debtors paid for at the time, they should remain on the hook for potentially millions of dollars in fees going into the future indefinitely while the reorganized debtors get no continuing benefit.  Yet, this is apparently the U.S. Trustee's argument.  Indeed, much like in *Webb's*, where the Supreme Court struck down a court fee as a taking because the debtor had already paid a separate fee that covered the court's costs,[30] the U.S. Trustee's position is an attempt to impose another, additional unearned fee for services that the reorganized debtor has already paid for, without providing any additional benefit to the reorganized debtor.  The U.S. Trustee's argument should be rejected.[31]

55.    Lastly, the Response argues that the U.S. Trustee fees are reasonable, because

---

[30] *See Webb's*, 449 U.S. at 163.

[31] The U.S. Trustee also argues that "[a]s long as this case remains open, NewPage receives the benefits of this system." Response at ¶ 51 (citing *In re A.H. Robins Co. Inc.*, 219 B.R. 145, 148 n.8 (Bankr. E.D. Va. 1998) (noting that while the U.S. Trustee had done little in the case post-confirmation, the debtor "benefitted from the Court's continued involvement in this still-open case")).  However, the U.S. Trustee fails to give any example of how this is true either in the Chapter 11 Case or in other chapter 11 cases in the aggregate, and fails to respond to NewPage's argument in its Motion (at ¶¶ 36, 41) that the U.S. Trustee provides extremely attenuated services during the post-confirmation period.  As such, the U.S. Trustee's argument should not be accorded any weight.

such fees also fund the wider bankruptcy system.  *See* Response at ¶ 55 ("two percent of the quarterly fees assessed under section 1930(a)(6) is allocated to the courts to fund 18 bankruptcy judgeships."); *see also* Response at ¶¶ 52-56.  The problem with this argument is that it still means the U.S. Trustee receives up to $245,000 (*i.e.*, 98% of $250,000) per-quarter while providing virtually no services during the post-confirmation period.  That is not a fair approximation of the benefits supplied by the U.S. Trustee, and for that reason the statute, as interpreted by the U.S. Trustee, is unconstitutional.[32]  In contrast, notwithstanding the fact that the U.S. Trustee's duties are significantly attenuated during the post-confirmation period, adopting NewPage's view of assessing U.S. Trustee fees based predominantly on plan-related disbursements is congruous with the U.S. Trustee's minimal remaining duties post-confirmation such as monitoring plan implementation.  *See* 28 U.S.C. § 586(a)(3)(B).

> **v.    *NewPage Does Not Seek to Bifurcate 28 U.S.C. § 1930(a)(6)***

56.    The Response continues its flurried attempt to uphold the constitutionality of the U.S. Trustee fees by arguing that NewPage is attempting to bifurcate 28 U.S.C. § 1930(a)(6) by

---

[32] The U.S. Trustee also cites a ream of case law supposedly rejecting NewPage's argument that the imposition of $250,000 in quarterly fees would be "unfair" during the post-confirmation period.  *See* Response at ¶¶ 57 (citing Motion at ¶¶ 36-37).  Not a single case the U.S. Trustee cites in making this argument, however, involved a takings challenge to U.S. Trustee's fees, and all the cited cases predated the 2017 amendment.  *See In re Kroy (Europe) Ltd.*, 244 B.R. 816, 819 (D. Ariz. 2000) (holding that the court could not create an "equitable" exception to the payment of U.S. Trustee fees); *In re McLean Square Associates*, 201 B.R. 436, 443 (Bankr. E.D. Va. 1996) (holding that quarterly fees remain payable post-confirmation); *United States Trustee v. Pettibone Corp.*, 251 B.R. 335, 341 (N.D. Ill. 2000) (stating that the court does not have to "tailor the [U.S. Trustee's] fees to the amount of time or effort actually expended by the UST"); *United States Trustee v. Boulders on the River (In re Boulders on the River)*, 218 B.R. 528, 540 (Bankr. D. Or. 1997) (intimating that the imposition of a quarterly fee post-confirmation would only be justified on the basis the trustee had post-confirmation duties without delving into any constitutional issues); *In re Quality Truck & Diesel Injection Service*, 251 B.R. 682, 688 (S.D. W. Va. 2000) (observing simply that "nowhere in the statute or legislative history is it indicated that Congress sought *strict proportionality* between the quarterly fees paid and the services rendered" without delving into any takings issues) (emphasis supplied); *In re Huff*, 270 B.R. 649, 653 (Bankr. W.D. Va. 2001) (determining amount of post-confirmation fees due without considering any takings issues); *A. H. Robins Co., Inc.*, 219 B.R. 145, 148-49 n.8 (Bankr. E.D. Va. 1998) (determining amount of post-confirmation fees due without considering any takings issues); *Vergos v. Uncle Bud's, Inc.*, 1998 WL 652542 at *7 (M.D. Tenn. Aug. 17, 1998) (rejecting argument that assessing post-confirmation fees was "grossly unfair" without deciding whether the user fees failed to amount to a fair approximation of the benefits of the services rendered under the Takings Clause).  As such, none of the preceding cases cited in the Response speak to the issue before the Court.

giving it two different meanings pre-confirmation and post-confirmation.  *See* Response at ¶¶ 58-59.  It is unclear how this argument even relates to NewPage's challenge to the constitutionality of the U.S. Trustee's excessive post-confirmation fees, but it is wrong nonetheless.

57.    As argued in the Motion (*see* ¶ 33), NewPage's position totally aligns with existing jurisprudence within the Third Circuit regarding pre-confirmation fees, where it was held that "disbursements subject to quarterly U.S. Trustee fees under 28 U.S.C. § 1930 must be derived from property of the bankruptcy estate."  *In re Nassau Tower Realty, LLC*, 518 B.R. 842, 846-47 (Bankr. D.N.J. 2014).  NewPage's argument that post-confirmation fees should also be related to the bankruptcy is completely in sync with *Nassau*'s reasoning, actually harmonizing the pre-confirmation and post-confirmation definition of "disbursements" by making sure both derive or are traceable from the bankruptcy estate.  Indeed, NewPage's interpretation of the statute avoids the bifurcation of "disbursements" created by the U.S. Trustee's interpretation, whereby "disbursements" means "payments connected to the bankruptcy estate" during the pre-confirmation period, but then switches to meaning "every payment made by a reorganized debtor whether connected to the bankruptcy estate or not" during the post-confirmation period.[33]  As such, given the fact that the imposition of such excessive fees post-confirmation would raise a serious doubt as to the constitutionality of 28 U.S.C. § 1930(a)(6), the Court should hold that the U.S. Trustee fees during the post-confirmation period should be calculated solely based on

---

[33] However, even if NewPage's construction of 28 U.S.C. § 1930(a)(6) is considered to create a difference between the term "disbursements" in the pre-confirmation context and in the post-confirmation context, such a result would not be unprecedented.  For instance, many cases have held that "related to" jurisdiction means something different post-confirmation than it does pre-confirmation, even though the words "related to" are the same in both contexts.  *See, e.g., Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 164 (3d Cir. 2004) (holding that a difference exists between related to jurisdiction "pre-confirmation" and "post-confirmation"); *H & L Developers v. Arvida/JMB Partners (In re H & L Developers)*, 178 B.R. 71, 76 (Bankr. E.D. Pa. 1994) ("Once a plan has been confirmed, the court's jurisdiction begins to weaken.") (internal quotations omitted); *Eastland Partners Ltd. v. Brown (In re Eastland Partners Ltd.)*, 199 B.R. 917, 919-20 (Bankr. E.D. Mich. 1996) (holding pre-confirmation jurisdiction to be different from post-confirmation jurisdiction, and stating "[f]ollowing confirmation of a chapter 11 debtor's plan, a bankruptcy court has a fairly narrow jurisdiction.").

disbursements related to the bankruptcy in conformance with NewPage's position.

## CONCLUSION

58.     For all of the foregoing reasons, NewPage submits that the Court should (i) overrule the Response and (ii) enter a final decree closing the Chapter 11 Case.  In the event that the Court decides to sustain the Response or take the U.S. Trustee fee dispute *sub judice*, the Court should still enter a final decree closing the Chapter 11 Case.

## NOTICE

59.     Notice of this Reply has been provided to: (a) the U.S. Trustee; (b) counsel to Bank of New York Mellon, as indenture trustee for the 11.375% senior secured first-lien notes due 2014; (c) counsel to the Litigation Trust; and (d) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b).  NewPage submits that no other or further notice need be provided.

*[Remainder of page intentionally left blank]*

104574149v6

WHEREFORE NewPage respectfully requests the Court enter the final decree, granting the relief requested in the Motion and such other relief to NewPage as the Court deems appropriate under the circumstances.

Dated: December 17, 2018
       Wilmington, Delaware

Respectfully submitted,

**PACHULSKI STANG ZIEHL & JONES LLP**

 */s/ Michael R. Seidl*
Laura Davis Jones (Bar No. 2436)
Michael R. Seidl (Bar No. 3889)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: 302.652.4100
Facsimile: 302.652.4400
Emails: ljones@pszjlaw.com
       mseidl@pszjlaw.com

-and-

**PROSKAUER ROSE LLP**
Ehud Barak
Chris Theodoridis
PROSKAUER ROSE LLP
Eleven Times Square
(Eighth Avenue & 41st Street)
New York, NY 10036-8299
Telephone:  212.969.3000
Facsimile:  212.969.2900

*Co-Attorneys to NewPage Corporation*